Commonwealth ex rel. Davis *v.* Davis et al., Appellants.

Argued November 22, 1929.

Before Porter, P. J., Trexler, Keller, Linn, Gawthrop, Cunningham and Baldrige, JJ.

*Claude B. Wagoner,* and with him *Charles S. Wagoner,* for appellants.

*David F. Maxwell,* and with him *Thomas L. Hoskins* and *Edmonds, Obermayer and Rebmann,* for appellee.

Per Curiam, December 12, 1929:

We affirm the order appealed from on the following extract from the opinion of the learned court below: "This is an application by John P. Davis to obtain the custody of his daughter, Mary Elizabeth Davis, two and one-half years old, now in the pos-

**444**

session and custody of the child's mother, who was married to the said Davis and who is now, after a divorce and remarriage in Mexico to William R. Hewes, living with the said Hewes as his wife."

"The relator and respondent were married at Long Beach, California, in November, 1925, being at that time 29 and 19 years of age respectively. On June 10, 1927, a daughter, the subject of this controversy, was born to them. In September, 1927, the respondent left her husband while living at Long Beach, and, taking the child with her, went to the home of her mother, Mrs. Bessie S. Kelly. She continued to live there, and in January, 1928, instituted a divorce action against the relator in California. This suit was later discontinued. In June, 1928, she started an action for divorce in Nogales, Mexico, without, however, going to Mexico for that purpose, and on March 6, 1929, obtained a decree in that action. On March 7, 1929, she married William R. Hewes at Nogales, and came to Spring City, Pennsylvania, where she has since made her home with him as his wife. The child was with her mother, the respondent, until January, 1929, when the latter left it with her mother and went away, later, in March, going to Mexico to receive her divorce decree. After about two months the relator took the child to live with him at his mother's home in Long Beach, with the consent of the respondent's mother. In August, 1929, the respondent returned to California and there pretended to effect a reconciliation with the relator and lived with him as his wife for a period of about three weeks leaving without notice to the relator and taking the child with her to Spring City, in this county. The relator came east, located his child and brings this action to recover custody and possession thereof.

"The man, William R. Hewes, above mentioned, arrived in Long Beach, where the respondent lived with

the relator before their separation, and was entertained in their common home several times. After the separation he saw the respondent more or less frequently, and after the divorce action was instituted in Mexico, his visits to her were a daily occurrence. He journeyed with her to Nogales, with another couple, at the time she received her decree in divorce, for the obvious purpose of marrying her the following day, and brought her to Spring City, where they have been living as above mentioned. He agreed that she might resort to the expedient of pretending to be reconciled with the relator and living with him as his wife if it was necessary to do so in order to get possession of her child. When he arrived in Long Beach, he was penniless, by reason of his betting at the races at Tia Juan, and was compelled to pawn his clothes in order to live. At that time he used the surname of Hamilton, because he did not desire his friends or relatives to know that he was working as a dishwasher in a club. Prior thereto he had been employed off and on for several years by the Jones Motor Company, at Spring City, as a salesman of automobiles.

"We believe that the relator should have custody and possession of his daughter. We are mindful of the presumption of law that the interest of a child of tender years will be best served by committing it to its mother's care, but that presumption may be rebutted, and each case must stand upon its own facts. We are also mindful that the thing to be considered is the best interests of the child. We believe that the testimony presented to us has demonstrated that the best interests of this child will be served by giving it into the care and protection of the relator. His appearance in court and on the witness stand impressed us favorably. He is engaged in the hardware business in Long Beach, and has been for several years, where he earns sufficient to support and educate his daughter.

His mother is 58 years old, has raised 5 children and, it was testified, is able and willing to undertake the care of her granddaughter after she has had an experience of 5 months, from March to August of this year, in that connection.

"On the other hand, the child's mother, we are constrained to believe, would not exert a proper influence upon her daughter. Without any real cause appearing to us other than probably an infatuation for Hewes, she left her husband and the home he had provided where they had lived since their marriage, and went to her mother's, in Compton, a few miles away. She permitted Hewes to call upon her and since March, 1928, accepted daily attention from him. She dropped the divorce action which she had started in California, giving as a rather inadequate reason therefor that it was contested and would involve many friends. We believe that she obtained her divorce in Mexico for the purpose of marrying Hewes and had the ceremony performed in that country because of legal advice that it would be of doubtful legality if performed in California. She left her child at that time with her mother and came east with Hewes as his wife. After a few months, she returned to California and resumed marital relations with her husband, under the guise of a reconciliation and disregard of the proceedings in Mexico, simply, as she testified, as a subterfuge to obtain possession of her child. She then, without any notice to her husband, returned to Spring City, bringing her daughter with her. The child is now living with the respondent and Hewes, who are boarding with a Mr. and Mrs. Joe Miller in Spring City.

"We believe that a woman who behaved so is not as fit a person to bring up her child as the man who has behaved as the relator in this case has done. Her standard of morals, the value in which she holds the marital relations and marriage oath is not high and it

would be most unfortunate were they passed on to this daughter. We realize that the child is young, but we also believe that she is impressionable and would, even at her tender age, consciously or subconsciously be influenced by the characters and actions of those with whom she would be living in the family relation. We have in mind as well that Hewes would be living in the home as her stepfather. We do not believe that his influence would be good. He did not seem to desire steady employment with the Jones Motor Company, as he left its employ voluntarily several times. He so managed his affairs that he arrived in Long Beach without funds, by reason of his gambling losses and 'was running around with a right fast bunch,' to use his own words. He did not impress us favorably as one who was willing to settle down and work steadily to maintain a home·and support a family. Upon the above considerations, we believe that it is an exercise of the sound discretion of this court, under the facts of this case, to direct that the child, Mary Elizabeth Davis, be delivered to the care and custody of her father, the relator.''

Order affirmed.