## Maisels Adoption Case.

Argued January 13, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN and MCBRIDE, JJ.

*Edward A. Garabedian,* for appellant.

*Edwin E. Lippincott, II,* with him *Lippincott & Donaldson,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 16, 1959:

Over the objection of the natural mother and with the consent of the natural father, the Orphans' Court of Delaware County decreed the adoption of a then 6 year old female child by her uncle and paternal aunt in whose custody she had been for approximately three years. From that decree the child's mother has taken this appeal.

Stanley and Edna Maisels were married January 19, 1945 and of this marriage one child, Carole Ann Maisels, was born on October 6, 1951. This marriage terminated in divorce on May 21, 1954. The parties lived separate and apart until the early fall of 1954 when, without a remarriage, they went to live together and remained together until November or December, 1954. Carole Ann lived with her parents continuously until the divorce, then with her mother alone and then with both parents, after they resumed living together, until a final separation took place. From November or December, 1954, Carole Ann has lived with Mr. and Mrs. Alfred Carson, the adoption petitioners, Mrs. Carson being the sister of Stanley Maisels.

Two questions are before us: (1) was the evidence before the court below legally sufficient to justify a finding that the mother had abandoned this child; (2) if the evidence as to abandonment was sufficient, was there legally sufficient evidence that this adoption would promote the best interests and the welfare of the child? We reach the second question *only* if we find there was legally sufficient evidence on the record

of an abandonment. "Unlike custody cases, in adoption proceedings the welfare of the child is not material until either consent or abandonment as prescribed by the Adoption Act has been established.": *Susko Adoption Case,* 363 Pa. 78, 81, 82, 69 A. 2d 132; *Bair Adoption Case,* 393 Pa. 296, 299, 141 A. 2d 873; *Ashton Adoption Case,* 374 Pa. 185, 196, 97 A. 2d 368; *Schwab Adoption Case,* 355 Pa. 534, 50 A. 2d 504.

Adoption being a creature of statute, the statute's provisions must be strictly complied with. In the absence of consent of a living natural parent those who seek to adopt a child under the age of eighteen years must prove to the satisfaction [1] of the hearing judge that such natural parent has abandoned the child.

"Abandonment", as defined by the statute,[2] is "conduct on the part of a parent which evidences a settled purpose of relinquishing parental claim to the child and of refusing or failing to perform parental duties" and such conduct must be shown to have continued "for a period of at least six months". The court below found that the conduct of Edna Maisels from October 1955 to the summer of 1956 constituted an abandonment of her child.

The scope of our appellate review is clear; even though this appeal is in the nature of certiorari, we must examine the record to determine whether there is legally sufficient evidence to support the court's finding of abandonment: *Weinbach's Appeal,* 316 Pa. 333, 337, 175 A. 500; *Southard Adoption Case,* 358 Pa.

---

[1] Proof to the "satisfaction" of the court means "that the evidence shall be legally sufficient to support the finding and that it does not mean that the finding of a trial judge in such connection is *ipso facto* binding and conclusive without right to the party aggrieved to appellate review of the court's action.": *Davies Adoption Case,* 353 Pa. 579, 581, 46 A. 2d 252.

[2] Act of April 4. 1925, P. L. 127, §1, as amended, particularly by the Act of August 26, 1953, P. L. 1411, §1, 1 PS §1 et seq.

386, 390, 391, 57 A. 2d 904; *Ashton Adoption Case,*
supra, 195. Chief Justice JONES stated in the *Ashton*
case: "Whether or not a child has been abandoned is
a question of fact to be determined from the evidence
. . . and 'is a matter largely of intention'. . . . Actual-
ly, a finding of abandonment is an ultimate conclusion
of fact deduced or inferred by reasoning from estab-
lished facts . . .".

After her parents' divorce Carole Ann remained
for some time with her mother in Florida. Upon re-
turning to Philadelphia Mrs. Maisels and Carole Ann
went to the home of a friend, a Mrs. Lewis, in Clifton
Heights. Mrs. Maisels then called her former husband
requesting that he come and get the child which he did.
Mrs. Maisels then called a male friend and in response
to that call, he came to the Lewis home. Mrs. Lewis
testified that Mrs. Maisels and this man occupied the
same bedroom that evening. When Mrs. Lewis learned
of this and registered her objection, both Mrs. Maisels
and this man left the Lewis home.

Either in the late summer or early fall of 1954,
Stanley Maisels and Edna Maisels, even though di-
vorced, went to live together in Philadelphia and took
Carole Ann with them. Carole Ann was placed in a
nursery home during the daytime when her parents
were working and Mrs. Maisels at the end of each day
would call for her. In November 1954 an incident oc-
curred concerning which there are two different ver-
sions: according to Stanley Maisels, the child's mother
failed to call for the child one day and, in response to
a call from the nursery home, he went to the home and
took the child to the home of his parents; according to
Edna Maisels, Stanley Maisels went to the home with-
out her knowledge and took the child to the home of his
perants. Regardless of which version be accepted, the
fact is that several days after Carole Ann was taken

from the nursery home she went to live with the petitioners, Mr. and Mrs. Alfred Carson, and she has lived with them ever since that time.

The events which transpired after the Carsons received custody of the child are also the subject of controversy. Petitioners claim that Mrs. Maisels "cleaned out" the apartment and disappeared, while Mrs. Maisels claims that she remained in Philadelphia until March 1955, that she tried by telephone to get permission to see her daughter but was refused permission, that finally Stanley took her to the Carson home in January, 1955, and she saw the child sleeping. It is significant that an inquiry was made of Mrs. Maisels' sister concerning Mrs. Maisels' whereabouts and the sister informed the Carsons that she had left for Florida, whereas, according to Mrs. Maisels, she went to New York in March 1955. It was not until June 1955 that Mrs. Maisels came to the Carson home. On that occasion she had dinner with the Carsons, saw the child, and upon learning that Carsons were planning to adopt Carole Ann, stated that she would go along with it feeling it was for the best interests of the child. This incident remains uncontradicted on the record.

It was not until Carole Ann's birthday—October 6, 1955—that Mrs. Maisels again visited the Carson home or saw her daughter. From that date until the "summer of 1956", (according to Carsons' testimony), or until the latter part of April or the early part of May, 1956 (according to Mrs. Maisels' testimony), Carole Ann's mother made no effort to see her, to write to or concerning her or even to send her a gift. It appears uncontradicted from the testimony that during this period of time Mrs. Maisels was living with a married man in Harrisburg and New York.[3] Even under Mrs.

---

[3] In addition to this testimony, there was testimony of other improper conduct on Mrs. Maisels' part. While such evidence would

Maisels' testimony, during this period of over six months, with the exception of having her sister call the Carson home on one occasion, she made no attempt to see the child, to send her gifts or to do anything for the child. In April 1956 she met with the Carsons at the home of a friend, and at this time she told them she would not sign the adoption papers and that she wanted the child. While she did tell the Carsons she wanted to take the child right away she admitted on the stand that she said that in "desperation" and did not really mean it. Throughout this period of time it is very evident that Mrs. Maisels was more interested in her affair with this married man than in the welfare of Carole Ann.

From June 1956 until October 7, 1957—the date of the adoption hearings—Mrs. Maisels did not see the child. She testified that she made some effort by telephone to see the child but that such efforts were rebuffed by the Carsons and that she retained counsel but that nothing was done by counsel either toward securing custody of the child or visitation with the child.

The record contains evidence that, on only two occasions during the period of approximately 3 years, did Carole Ann's mother ever send or take a gift to her, that, although employed at times during the period, she never contributed nor offered to contribute anything to the child's support, that during her married life she had on occasions threatened her husband that she was going to allow Carole Ann to be adopted by

---

be most important in a custody proceeding, its relevancy in the instant proceeding is that it might tend to show *why* the mother may have lost interest, if she did, in the child and permit the child to be reared and trained by persons other than herself. The admitted submission to an abortion was relevant as indicating a lack of interest in children on Mrs. Maisels' part.

other persons and that on one occasion she had told her mother-in-law that she would not become a "martyr" for the child.

Evaluating the evidence of record we find a young couple whose marriage, due no doubt in large measure to the husband's addiction to narcotics, after eight years was terminated by divorce. The ill-advised resumption of living together, without the benefit of a marriage ceremony, resulted in the placement of the child in the nursery home. Whichever version be accepted of the severance of the child from the nursery home, the fact is that the child was placed in the custody of petitioners with the express approval of the father and, at least, the tacit approval of the mother. From that time on the child's mother permitted petitioners to assume all responsibility for rearing and training Carole Ann, with at best only occasional and infrequent attempts to see the child, without any outward or objective indication of the interest a mother should have in her only child and without making any effort to regain the custody of the child so that she might assume the responsibility for the child's welfare.

The evidence clearly indicates that for a period of over 6 months beginning October 6, 1955, Mrs. Maisels completely and wholly forgot the child and her maternal duties toward the child. The finding of the court below that during this period Mrs. Maisels abandoned the child is supported by legally sufficient evidence.

That the child's welfare and best interests will be promoted by her adoption by petitioners is clear. Not only did neighbors of petitioners so testify but Mrs. Maisels herself admitted that the Carsons are persons of good character, that in their custody Carole Ann has been reared in a proper environment, that she has been well taken care of and treated as one of their own

children. It is significant that not until the adoption proceedings was any effort made by Mrs. Maisels to regain the custody of this child indicating that she must have been satisfied that Carole Ann was being raised in proper surroundings and in a proper manner. Carole Ann knows no other parents than the Carsons; for four and one-half years they have given their love and affection to her, to them she is their daughter and to her they are her parents. To sever this relationship on the basis of the mother's belated show of interest would be wholly unjust and unfair to this child.

Lastly, counsel for Mrs. Maisels urges that she did not have a full and complete hearing. Our examination of the record indicates the contrary. Furthermore, on February 20, 1958 before the court below, the counsel then acting for Mrs. Maisels stipulated of record that he did not raise the insufficiency of time allowed to the natural mother in the presentation of her case and, although this does not appear plainly of record, counsel then stated that he did not care to have the case reopened for any testimony. We are satisfied that Mrs. Maisels had her "day in court" and her rights were fully and adequately protected.

The language of this Court in *Davies Adoption Case*, 353 Pa. 579, 587, 46 A. 2d 252, is most appropriate: "Abandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child. We do not mean to say that the natural parental right to a child, which has been nullified by abandonment, may not later be retrieved. It may be. But . . . once abandonment has been proven with required legal sufficiency, the welfare of the abandoned child is the primary and paramount concern of the court unaffected by the desire or caprice of the abandoning parent". The actions of Mrs. Maisels over

this long period of time belie the solicitude for the child's welfare she now so belatedly exhibits. The severance of the parent-child relationship between herself and Carole Ann arises solely because she failed to act as a mother toward this child.

Decree affirmed.

Mr. Justice MUSMANNO dissents.