Dettra Will.

Argued May 5, 1964. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Frank F. Truscott,* with him *Otis W. Erisman, I. Irving Tubis,* and *Truscott, Kline, O'Neill & Howson,* for appellants.

*Paul Maloney,* with him *Holbrook M. Bunting, Jr.,* and *Pepper, Hamilton and Scheetz,* for appellees.

*Vincent X. Yakowicz,* Deputy Attorney General, with him *Herbert W. Salus, Jr.,* Special Assistant Attorney General, and *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

Opinion by Mr. Justice Jones, July 31, 1964:

On this appeal we are called upon to determine two principal questions: (1) whether the evidence produced in the court below was legally sufficient to support a finding that the decedent lacked testamentary capacity to make this will and/or a finding that undue influence was exerted upon decedent to procure this will so as to justify the conclusion that this will is invalid? (2) whether the proponents of the will received a fair and an impartial trial?

Elsa W. Dettra (decedent), a resident, for approximately a quarter century, of the Washington Hotel in Philadelphia, died at the age of 85 years on May 19, 1961. At the time of her death, several persons claiming to be decedent's relatives survived her.[1] Decedent's estate was inventoried at approximately $127,-000.

On May 16, 1961—while decedent was a patient in Temple University Hospital[2]—decedent executed the will now challenged. Under the terms of that will, she gave her entire estate ". . . unto my friends Meyer M. Weissman, [Weissman], and Estelle Weissman, [Mrs. Weissman], husband and wife, in consideration of their having taken care of me for many years . . ." and appointed Weissman as the executor. Whatever relationship existed between decedent and the Weissmans arose from the fact that, during the time of decedent's residence at the Washington Hotel, Weissman was at one time the manager and later a part owner of that hotel.

On May 23, 1961, the will of May 16, 1961 was probated and letters testamentary were issued to Weiss-

---

[1] Rilla A. Cornell and Estelle Vogel, allegedly first cousins, and G. W. Aiman, allegedly a first cousin once removed.

[2] On April 15, 1961, the decedent had fallen and broken her hip, necessitating surgery to set and fix the hip; shortly thereafter, by reason of the development of gangrene due to arteriosclerosis, the amputation of decedent's right leg above the knee became necessary.

man. The Commonwealth of Pennsylvania appealed to the Orphans' Court of Philadelphia County from the probate of that will.[3] Estelle Vogel and Rilla Cornell, claimant-relatives, later joined in the proceedings and, although disputed, it seems clear that the Baptist Home is now properly a party to these proceedings.

The Orphans' Court of Philadelphia County, acting through Judge KENDALL H. SHOYER, being of the opinion that the appeal raised substantial issues of fact, impaneled a jury to hear and determine the several issues. After taking voluminous testimony, two issues were presented for determination by the jury: (1) was decedent at the time of the execution of the disputed writing of May 16, 1961, a person of sound mind? and (2) was the disputed writing of May 16, 1961, procured by undue influence, duress or constraint practiced upon the decedent by Weissman or others on his behalf? The jury answered both questions in the affirmative, i.e., that decedent on May 16, 1961, was a person of sound mind but that the will had been procured by the exercise of undue influence. The chancellor entered a decree which affirmed the jury's verdict and invalidated the will. The court en banc, expressly joined in by the chancellor, however, modified the chancellor's decree by setting aside the will *both* on the ground that decedent was not of sound mind and that the will was procured by undue influence.[4] From that decree this appeal has been taken.

---

[3] The alleged interest of the Commonwealth was either (a) as heir to decedent's estate (Act of April 24, 1947, P. L. 80, §3, as amended, 20 P.S. §1.3(6)) or (b) under the Act of April 9, 1929, P. L. 343, §1314, 72 P.S. §1314 or (c) as parens patriae on behalf of the Baptist Home, Philadelphia, sole beneficiary under an alleged will of August 12, 1930.

[4] Section 745(c) of the Orphans' Court Act of 1951 (Act of Aug. 10, 1951, P. L. 1163, §745, as amended, 1956, Feb. 10, P. L. (1955) 1022, §§5, 7, 1961, July 14, P. L. 610, §1, 20 P.S. §2080.745) provides: ". . . the court, in its discretion at any stage of the

Appellants (Weissmans) attack the decree on several grounds: (a) that the evidence established that the decedent did possess testamentary capacity on May 16, 1961, and the contestants of the will failed to sustain their burden of overcoming the presumption of decedent's testamentary capacity by strong, clear and convincing evidence; (b) that there is no evidence of the exertion of any undue influence, duress or constraint practiced upon the decedent by Weissman or others; (c) that appellants were not given a fair and impartial hearing to which they were entitled because (1) the chancellor should have disqualified himself, (2) the chancellor, by permitting the introduction into evidence of irrelevant testimony, seriously prejudiced the appellants, (3) certain remarks of and the conduct of the chancellor reflected adversely on appellants and their counsel, (4) the chancellor erred in certain portions of his charge and, by so doing, prejudiced appellants and (5) appellants were improperly denied the right to poll the jury after the verdict was returned.

In passing upon the issues of testamentary capacity and undue influence our scope of review is limited and restricted. The findings of fact of a chancellor, approved by the court en banc, are controlling provided such findings are based upon legally competent and sufficient evidence and our scope of review is to determine whether the findings of fact are supported by sufficient evidence and whether the court below committed an error of law or abused its discretion: *Williams v. McCarroll*, 374 Pa. 281, 298, 97 A. 2d 14; *Masciantonio Will*, 392 Pa. 362, 367, 141 A. 2d 362; *Girsh Trust*, 410 Pa. 455, 467, 189 A. 2d 852. Moreover, in

proceedings, may impanel a jury to decide any question of fact but *the verdict of the jury shall be advisory only.*" (Emphasis supplied). As stated in the opinion of the court below: ". . . the Orphans' Court has control over the verdict."

reviewing the proceedings in the court below, we do not pass upon or determine the credibility of the witnesses; that is a matter for the chancellor, not for this Court: *Girsh Trust,* supra.[5]

On the questions of testamentary capacity and undue influence, voluminous testimony—oral and documentary, factual and opinion—was presented. We have read and carefully considered *all* the evidence, that of proponent-appellants as well as contestant-appellees; in so doing, we have been mindful wherein the burden of proof rested, of the fact that opinion evidence carries little weight, of the importance to be attached to the testimony of the scrivener and the subscribing witnesses and all the other rules enunciated in our case law as guiding principles in this area of the law. It will serve no useful purpose to recite the evidence as presented, either at length or capsulized. It is sufficient to state that our examination and scrutiny of this record leads us to thoroughly agree with the final conclusion reached in the court below that the alleged will must be invalidated both on the ground that decedent on May 16, 1961, did not possess testamentary capacity as well as on the ground that the writing of May 16, 1961, was procured by the exertion upon decedent of undue influence by Weissman, who then occupied a confidential relationship to decedent. Such conclusion is bottomed not upon conjecture, surmise or suspicion but upon evidence clear and convincing in

---

[5] In the case at bar, the chancellor originally upheld that portion of the jury's verdict which found that decedent was of sound mind, although in the opinion of the chancellor "[i]f [he] had heard this case without a jury, on all the evidence he would have found that decedent was not a 'person of sound mind' ". However, the court en banc ruled that the decedent was not at the time of the writing a person of sound mind and the chancellor, concurring in this view, took the position that "the evidence when *considered as a whole*" demonstrably would not support the jury's finding that decedent was of sound mind.

its nature. The evidence on this record irresistibly commands the invalidation of this will, and we sustain the court below in arriving at such result.

Did the proponent-appellants receive a fair and an impartial trial? At the outset of the hearings and now, the proponent-appellants contend that *all* the judges of the Orphans' Court of Philadelphia County were disqualified to hear and determine this matter and that a judge from outside Philadelphia County should have been designated to try this cause. The background for this contention is that Philip Klein, a brother of President Judge CHARLES KLEIN of the Orphans' Court, had acted as counsel for the decedent for a brief period of time prior to May 16, 1961, that he had consulted with the decedent about making a will, that such representation of the decedent was *at Weissman's suggestion and request,* that he, in company with Weissman, examined, under a restricted power of attorney, the contents of one safe deposit box of decedent and that later, upon learning that Weissman alone had examined the contents of another safe deposit box and that decedent, contrary to her expressed instructions to Philip Klein, desired to leave her entire estate to the Weissmans, Philip Klein, suspicious that all was not proper, withdrew from the matter. Suspicious that something untoward was about to take place, Attorney Klein brought the matter to the attention of President Judge KLEIN. Moreover, while still representing decedent, Philip Klein asked Attorney Tawresey, who for a number of years had been a law clerk of the Orphans' Court and was then an "examiner" for the court, to accompany him to see the decedent and Attorney Tawresey acquiesced in such request and did visit decedent with Philip Klein. It is to be noted that Attorney Tawresey's visit to decedent was at Philip Klein's request and not, as appellants suggest, by reason of any impulsion on the part of the court or any member thereof. Upon

such a background it is urged that *all* the judges of the court became disqualified to sit and determine this cause.[6] This contention is clearly without merit. There is not a scintilla of evidence that any member of the court had any interest whatsoever in this matter. Simply because the suspicion of a member of the bar was reported to the court and that an employee of the court had some knowledge of the matter did not per se disqualify the members of the court. The presence of Attorney Tawresey at the hospital with Philip Klein was not in an official capacity nor as a representative of the court. The disqualification of all the judges was not called under the circumstances herein presented.

Appellants next complain that the chancellor erred in the admission of testimony as to appellants' financial resources, as to litigation between Weissman, his brother, his mother and sister, as to a will drawn by the scrivener of the instant will for another resident of the hotel in which instrument Weissman was also named as a legatee and that the chancellor erred in restricting certain testimony proffered by the appellants. We have carefully examined those portions of the record which reflect the chancellor's actions in this respect and we are satisfied that, under the circumstances in this case, the chancellor did not err. Even so, if appellants' position is correct, a new trial should follow but appellants forget that any verdict by a jury in this area of the law is advisory and not binding on the court and, if error was committed, it was ultimately for the court, not the jury, to resolve this matter.

We have noted in this record some exchanges of remarks between the chancellor and counsel during the trial of this cause, exchanges which in many instances were brought about, albeit inadvertently, by the zeal and enthusiasm of appellants' counsel. In such ex-

---

6 President Judge KLEIN took no part whatsoever in the determination of this matter.

changes of counsel and chancellor, in the remarks of the chancellor and in the chancellor's charge, we find nothing which would justify the grant of a new trial or upon which a charge of prejudice or partiality could be founded.

Lastly, appellants contend that they were deprived of a fair trial because they were not given the requested right to poll the jury. Counsel were not present when the jury returned its verdict and, just prior to the time appellants' counsel reached the courtroom, the jury had been excused from further service although not yet dispersed. The chancellor, although requested, refused to permit the jury to be polled.

Absent any "outward indication of a lack of unanimity", the polling of a jury in a civil case is a matter of grace, not of right; that being so, the grant or refusal of a request to poll a jury lies within the sound discretion of the trial judge (*Reed v. Kinnik*, 389 Pa. 143, 148, 149, 132 A. 2d 208) and only an abuse of such discretion will warrant a reversal of the court's action in refusing to poll a jury. We find nothing, in the circumstances presented by this record, which indicates that the chancellor abused his discretion in refusing a poll of this jury.

Our scrutiny of this record reveals neither partiality nor unfairness on the part of the chancellor in any respect whatsoever.

An appraisal of the evidence of record reveals beyond question the soundness of the result reached in the court below. Plagued by infirmities, both mental and physical, decedent lacked testamentary capacity on the date and at the time she affixed her mark to this alleged will. Moreover, the evidence irresistibly indicates that the making of this will was accomplished through improper and undue influence exerted upon this aged and infirm decedent by Weissman who then stood in a confidential relationship to decedent. The

exertion by Weissman of such dominant influence is clear beyond question.

Decree affirmed. Costs on appellants.