## Brown, Appellant, *v.* Brown.

440

Argued September 16, 1965. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, and HOFFMAN, JJ. (FLOOD, J., absent).

*Harold B. Fink, Jr.,* for appellant.

*John A. Duvall,* for appellee.

OPINION BY ERVIN, P. J., October 6, 1965:

This is a habeas corpus proceeding instituted by a father, Alan P. Brown, against the mother, Edith Rae Brown, for custody of their two children, Lloyd Alan Brown, age 6, and Michelle Rae Brown, age 5. The court below awarded the custody to the maternal grandparents, Mr. and Mrs. Ray Hawkins, of Omaha, Nebraska.

The Browns were married on June 2, 1956. At the time of the hearing Mr. Brown was 34 years of age and we assume that his wife was approximately the same age. Mrs. Hawkins is 60 years of age and the record does not reveal the age of Mr. Hawkins. Mr. Hawkins has a malignancy and has received heavy doses of cobalt treatment for this condition. He did not come from Omaha to attend the hearing because of his nervous condition.

The father, Alan P. Brown, is a teacher of mathematics and science in a high school. The parties, prior to their separation, lived in a two-story home in Galeton, Pennsylvania, and there are a number of relatives of both parties living in or near that community. The boy was in the first grade in the school in Galeton and his teacher appeared at the hearing and testified that he was a good student and a happy child and that he wore clean clothes and was in regular attendance at school.

On March 4, 1964 the mother took the two children from their home in Galeton, while her husband was not present. The husband testified that he was not in-

formed that she was going to leave. He also stated that she left a note. She was driven to Omaha, Nebraska, by Jim Griffin. Sometime later Mrs. Brown left the children with her parents in Omaha, went to California and obtained work there. She admitted seeing Jim Griffin again while she was in California.

Michelle told her paternal grandmother that on the trip from Galeton to Omaha they stopped in a motel one night and had a room which had two beds in it and that one bed was shared by her brother and her and the other bed was shared by her "Mommy and Jim." She also said that she saw her mother give Jim a "wedding kiss." The boy corroborated the testimony about his "Mommy and Jim" sleeping in one bed.

On August 20, 1964 the father went to Omaha, Nebraska, and picked up the children and brought them back to Galeton.

The father, Alan P. Brown, instituted a divorce proceeding on the ground of indignities against his wife in Potter County in the fall of 1964 and obtained a decree of divorce on December 10, 1964. Mrs. Brown did not contest the case.

On December 31, 1964 the mother returned to Galeton and the father permitted her to take the children to relatives who lived in Galeton, for an overnight visit. The following day the father took the boy back to his home because of the boy's express desire to go home with him but the girl remained with the mother. This situation continued until the hearing.

The routine of the father when he had the children was to help the children get dressed, have breakfast with them and then take them to the home of Mrs. Close, a baby sitter, before he left for school. Either Mrs. Close or her husband would take the boy to school and keep the girl at home with her during the day. The father would pick up the children at Mrs. Close's home around 4:15 p.m. and they would then have supper at

the paternal grandmother's home and would then go to their own home for the night.

The court below felt that the children did not have a normal home life with the father due to the demands of his employment to be at school each school day and for that reason awarded custody to the maternal grandparents so that they could be taken and cared for by them in their home in Omaha, Nebraska.

We have always given great weight to the findings of the trial court in these custody cases because it usually has a better opportunity of passing upon the ability and character of the parties than we do: *Com. ex rel. Bentley v. Bentley,* 108 Pa. Superior Ct. 132, 136, 165 A. 44. On appeal, however, we are obliged to "consider the testimony and make such order upon the merits of the case, either in affirmance, reversal or modification of the order appealed from, as to right and justice shall belong." *Com. ex rel. Shamenek v. Allen,* 179 Pa. Superior Ct. 169, 175, 116 A. 2d 336.

We have great respect for the judgment of President Judge WALTER PIERRE WELLS, the trial judge in this case, but a majority of this Court is constrained to disagree with his disposition of this case. We can see no good reason why the best interest and welfare of these children will not be served by giving custody to the father. There can be no question but that he loved his children and that they loved him. It is true that because of his duties as a teacher he could not be with the children on school days but he provided good care for them in his absence. He was with them every day from approximately 4:15 p.m. on and with them all day on nonschool days. They lived in their own home, each child having its own bedroom. We think that he did a remarkable job in caring for these children as well as he did, under all the circumstances, and that the mutual love which they had for each other was sufficient to make up for any deficiencies in their daily routine.

"Because he is obligated by law to maintain and educate his children, a parent has the legal right to the custody of his child. This right is not absolute, but still it is so moving and cogent that it is forfeitable only by misconduct or by other factors which substantially affect the child's welfare. Com. ex rel. Fell v. Brown, 100 Pa. Superior Ct. 353. Experience has shown that generally a child's welfare is best promoted by entrusting its future to its parents. This experience is the basis for the principle that prima facie the parent is entitled to custody, and from this rule we depart only when we are constrained by the most compelling reasons. Com. ex rel. Keenan v. Thomas, 151 Pa. Superior Ct. 131, 30 A. 2d 246." *Com. ex rel. McTighe v. Lindsay,* 156 Pa. Superior Ct. 560, 562, 40 A. 2d 881.

Only unusual circumstances will justify placing a child beyond the jurisdiction of the court: *Com. ex rel. McLeod v. Seiple,* 193 Pa. Superior Ct. 131, 137, 163 A. 2d 912. We repeat what was said by Mr. Justice, now Chief Justice, BELL in *Shoemaker Appeal,* 396 Pa. 378, 152 A. 2d 666: "If all other factors are approximately equal, the Courts should prefer a resident to a nonresident guardian and custodian, since the former is more amenable to the Court's continuous watchful eye, supervision and control."

We agree with the court's conclusion that custody should not be given to the mother because this record indicates an instability of character which would not be for the best interest of the children. While we have no doubt that the maternal grandparents are good people, it is a fact that they are getting along in years and that the maternal grandfather has a malignancy. It may be that the grandmother will have to exercise care in behalf of her husband because of his condition and that she would have little time left to care for these children.

The father is a school teacher and certainly should be well qualified to help his children with their school problems. The children were known by nearly everybody in Galeton and must have had many playmates in that lovely little community. To transplant them 1600 miles away from their home to a place where they could very rarely see their father and other relatives on both sides of the family, does not seem to be for their best interest and welfare.

In a supplemental opinion Judge WELLS said: "This Court did have an informal talk with each of these children and it is correct that they appeared to be intelligent and attractive children. The Court discussed with them their various homes with the father, with the mother and with the maternal grandparents. The little boy indicated he would like to continue to remain with the father. The little girl indicated that her only desire was to stay with her brother."

" 'Although the expressed wishes of the children are not controlling, . . . they constitute a factor which should be carefully considered.' Com. ex rel. Goldbaum v. Goldbaum, 161 Pa. Superior Ct. 131, 135, 53 A. 2d 746.

"In Com. ex rel. Stevens v. Shannon, 107 Pa. Superior Ct. 557, 563, 164 A. 352, we said: 'Even the preference expressed by a child must be based on good reasons, and the child's maturity and intelligence must be considered.' See also Com. ex rel. Brown v. Lane, 90 Pa. Superior Ct. 350, 352; Com. ex rel., Appellant, v. Tyrrell, 115 Pa. Superior Ct. 385, 386, 387, 175 A. 723; Com. ex rel. Conway v. Preston, 148 Pa. Superior Ct. 182, 186, 24 A. 2d 772.

"The law does not set an age over which the wish of the child is to be respected. The intelligence of a child is important and the wish should be based on real reason. 22 Temp. L. Q. 297." *Com. ex rel. Shamenek v. Allen*, supra, at page 176.

446

We are, therefore, of the opinion that the order of the court below must be reversed. Of course the mother's visitation rights should be preserved. These rights can be cared for either by stipulation or by order of the court below.

Order reversed and custody of Lloyd Alan Brown and Michelle Rae Brown is awarded to Alan P. Brown, their father.