## Snellgrose Adoption Case.
### Commonwealth ex rel. Snellgrose v. Harris, Appellant.

Argued January 4, 1967. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard W. Davis*, with him *Davis and Katz*, for appellants.

*L. E. Meyer*, with him *Meyer, Brubaker and Whitman*, for appellee.

OPINION BY MR. CHIEF JUSTICE BELL, April 18, 1967:
An appeal by Dr. and Mrs. Harris (1) from the Order of the Orphans' Court of Lebanon County and (2) from the Order of the Court of Common Pleas of

Lebanon County—each of which involved Thomi, a minor—were consolidated and heard together.*

On February 14, 1966, the appellants, Dr. and Mrs. Harris, filed a petition in the Orphans' Court of Lebanon County to adopt Thomi Georgia Snellgrose (hereinafter referred to as "Thomi"), a minor. After Thomi's mother, Anna Marie Snellgrose (hereinafter referred to as "Mrs. Snellgrose"), had been notified of the proceedings, she filed an answer opposing the petition for adoption. Mrs. Snellgrose also filed in the Court of Common Pleas of Lebanon County a petition for a writ of habeas corpus in order to obtain custody of Thomi. Hearings in the adoption case were held on July 6, 12, and 14, 1966. Over the objection of counsel for the Harrises, the Court in Lebanon County proceeded to take evidence in the habeas corpus case as well as in the adoption case, the same Judge sitting as both an Orphans' Court Judge and a Common Pleas Court Judge. The record in the adoption proceeding was incorporated by reference in the habeas corpus proceeding.

The Court below denied the petition for adoption on the grounds that no abandonment had been shown and awarded judgment in favor of Mrs. Snellgrose in the habeas corpus proceeding.

## I. Adoption Case

Mrs. Snellgrose, née Keim, was born and raised in Germany. Believing the Harrises to be her aunt and

---

* Jurisdiction over the appeals of the Harrises in the Orphans' Court proceeding exists under the Act of June 24, 1895, P. L. 212, §7.4(3), as amended, 17 P.S. §191.4(3). Jurisdiction over the appeal of the Harrises in the habeas corpus case exists by reason of certification of the case to this Court by the Superior Court, on the ground that common questions of law and fact were raised in both cases.

uncle, she communicated with them during the early 1950's concerning the possibility of moving to this Country, but she did not come to the United States until September 1958. In the meantime, while unmarried, she gave birth to Thomi on March 5, 1956 in Stuttgart, Germany; the reputed father was an American serviceman.

The Harrises took an active interest in the lives of both Thomi and Mrs. Snellgrose from the moment of their arrival in this Country. This interest resulted in Thomi's living with the Harrises for two extended periods of time—from October 1959 to December 1961, and from June 1964 to the present time. The Harrises contend that during each and both of these periods Mrs. Snellgrose had abandoned Thomi. Before considering the specific circumstances surrounding Thomi's living with the Harrises, it is appropriate to consider the law concerning adoption.

The law to be applied in an adoption case is well settled, although its application to the facts may be difficult at times because of the pull on our heartstrings and because the intention of the parent is a matter of inference. The Act of April 4, 1925, P. L. 127, §2, 1 P.S. §2, provides that a child may be adopted if the child's natural mother (1) consents to the adoption of the child, or (2) has "abandoned" the child for a period of six months or more. In the latter case, the child may be adopted, irrespective of whether the mother consents. There is neither any allegation nor any proof by the Harrises that Mrs. Snellgrose has consented to the adoption of Thomi. Therefore, the sole question presented by this appeal is whether there is adequate evidence to support the finding of the Court below that Mrs. Snellgrose has not abandoned Thomi for at least six months. *A finding of consent or abandonment is an absolute prerequisite to the approval of an adoption petition. Smith Adop-*

*tion Case,* 412 Pa. 501, 502, 194 A. 2d 919. The issue of the child's welfare and best interest, which is necessarily involved in every adoption case, is not reached unless and until the Court determines that there has been a consent or an abandonment by the child's parents. *Hufford Adoption Case,* 421 Pa. 257, 218 A. 2d 737; *Hookey Adoption Case,* 419 Pa. 583, 215 A. 2d 860. In the *Hookey* case, the Court aptly said (page 589) : "Once abandonment has been established and, *only then,* it becomes the duty of the court to determine whether the adoption of the child will be for the child's welfare and best interests. . . ."*

In *Hunter Adoption Case,* 421 Pa. 287, 218 A. 2d 764, the Court said (page 292) : "At the outset, it should be noted that mere neglect will not support a finding of abandonment. In order to sustain such a finding, it must appear that the parent intended to give up the child absolutely, never to claim it again, and that this intention was manifested for a period of at least six months. Harvey Adoption Case, 375 Pa. 1, 6, 99 A. 2d 276, 279 (1953)."

The burden of proof of abandonment is on the person seeking to adopt the child. *Maisels Adoption Case,* 395 Pa. 329, 149 A. 2d 38; *Hufford Adoption Case,* 421 Pa., supra. In *Hufford Adoption Case,* the Court said (page 259) : "In Maisels Adoption Case, 395 Pa. 329, 149 A. 2d 38, the Court said (page 332) : '. . . "Unlike custody cases, in adoption proceedings the welfare of the child is not material until either consent or abandonment as prescribed by the Adoption Act has been established.": Susko Adoption Case, 363 Pa. 78, 81, 82, 69 A. 2d 132; Bair Adoption Case, 393 Pa. 296, 299, 141 A. 2d 873; Ashton Adoption Case, 374 Pa. 185, 196, 97 A. 2d 368; Schwab Adoption Case, 355 Pa. 534, 50 A. 2d 504.' "

---

* Emphasis in the original.

In *Ashton Adoption Case,* 374 Pa. 185, 97 A. 2d 368, the Court said (page 195) : ". . . a finding of abandonment is reviewable on appeal: See Southard Adoption Case, 358 Pa. 386, 390-391, 57 A. 2d 904, and cases there cited. While an adoption case comes before an appellate court as on certiorari, it is the reviewing court's duty under the provisions of the Act of April 18, 1919, P. L. 72, 12 P.S. §1165, to consider the evidence, which is brought up by the certiorari, 'with like effect as upon an appeal from a judgment entered upon the verdict of a jury in an action at law.' Consequently, 'This requires us to examine the testimony [in adoption proceedings] to determine whether there is any evidence to sustain the findings of fact: [citing cases]': Weinbach's Appeal, 316 Pa. 333, 337, 175 A. 500; see also Susko Adoption Case, 363 Pa. 78, 81, 69 A. 2d 132."

The evidence to support the lower Court's finding that the Harrises have failed to establish abandonment of Thomi by Mrs. Snellgrose is certainly adequate.

In October 1959, Thomi and her mother resided in Kalamazoo, Michigan. The Harrises offered to take Thomi to their home in Lebanon, Pennsylvania, and Thomi's mother consented. Thomi stayed with the Harrises until December 1961. While Mrs. Snellgrose corresponded infrequently with the Harrises and Thomi, she made three or four visits to see her daughter at the Harrises' home during this time. She did not contribute to Thomi's support because the Harrises advised her that this was not necessary and that she should use the money to help establish herself. During this period of time, Mrs. Snellgrose married Mr. Snellgrose, and when the Harrises indicated their desire to adopt Thomi, Mr. and Mrs. Snellgrose immediately reclaimed Thomi from the Harrises. Mr. Snellgrose then instituted adoption proceedings in Kalamazoo, Michigan, which culminated in his adoption of

Thomi as his daughter. In January 1963, Mr. Snellgrose died.

In June 1964, the Harrises suggested that Thomi be permitted to spend the summer with them in Lebanon as she had done in the preceding summer. Mrs. Snellgrose agreed to this request. However, Thomi did not return to Mrs. Snellgrose at the end of the summer because of (a) Mrs. Snellgrose's financial difficulties and (b) her illness, which resulted in her undergoing two operations—one in January 1965 and one in July 1965. In the summer of 1965, Mrs. Snellgrose visited Thomi before the Harrises, with Mrs. Snellgrose's consent, took Thomi to Europe for a vacation. In the Fall of 1965, Mrs. Snellgrose sold a house which she had owned and bought another one in a better neighborhood. The purpose of her move was, at the suggestion of the Harrises, intended to improve the community in which Thomi was to live when she returned home. Mrs. Snellgrose prepared a room in the new house for Thomi. During this period of time, Mrs. Snellgrose corresponded with and telephoned the Harrises and Thomi at various times. When Mrs. Snellgrose received a letter from Thomi in November 1965, indicating that Thomi desired to remain with the Harrises on a permanent basis, she immediately telephoned Thomi to oppose this request. When the Harrises instituted this action to adopt Thomi, Mrs. Snellgrose immediately contested the action.

While the record supports an inference that Mrs. Snellgrose has twice allowed the Harrises to assume the major responsibilities of caring for Thomi for substantial periods of time and that she has been neglectful in not corresponding more frequently with Thomi and with the Harrises concerning Thomi, these facts are not sufficient to prove that Mrs. Snellgrose had abandoned Thomi during either period of time or manifested an intent to abandon her.

## II.  Habeas Corpus Proceeding

The Act of August 10, 1951, P. L. 1163, §301, as amended, 20 P.S. §2080.301, provides as follows: "The orphans' court shall have exclusive jurisdiction of . . . (8) Custody of Minors. The determination of the right to the custody of a minor in connection with any proceeding for his adoption or for the appointment of a guardian of his person."

Where an adoption proceeding is pending before the Orphans' Court, a habeas corpus action to determine custody is under the exclusive jurisdiction of the Orphans' Court, and if such a proceeding is brought in the Court of Common Pleas, it must either be dismissed or transferred to the Orphans' Court.  See *Commonwealth ex rel. Bendrick v. White*, 403 Pa. 55, 56, n. 1, 169 A. 2d 69; *Crozer Adoption Case*, 399 Pa. 493, 161 A. 2d 17.  This was not done.*

The Order of the Orphans' Court of Lebanon County denying the petition for adoption is affirmed.

The Order of the Court of Common Pleas of Lebanon County in re the custody of Thomi is vacated and the case is hereby transferred and remitted to the Orphans' Court of Lebanon County for further proceedings.

---

* The fact that the same Judge sat in both the adoption proceeding as an Orphans' Court Judge and in the custody proceeding as a Common Pleas Court Judge does not cure the error committed by proceeding in the custody case in the wrong Court.  On remand, the record made before the Court of Common Pleas can be incorporated by agreement of the parties into the further Orphans' Court proceedings.