## Snellgrose Adoption Case.

Argued January 10, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Richard W. Davis*, with him *Davis, Katz, Buzgon & Davis*, for appellants.

*J. R. Whitman*, with him *L. E. Meyer*, and *Meyer, Brubaker & Whitman*, for appellee.

OPINION BY MR. JUSTICE JONES, November 12, 1968:

On February 14, 1966, Dr. and Mrs. Albert Harris petitioned the Orphans' Court of Lebanon County to adopt Thomi Georgie Snellgrose (Thomi) and on June 24, 1966, Mrs. Anna Snellgrose, Thomi's natural mother, petitioned the Court of Common Pleas of the same County for a writ of habeas corpus to secure Thomi's custody. The Orphans' Court denied the adoption petition since abandonment had not been proven and the Common Pleas Court determined the custody proceeding in favor of the natural mother. Appeals from both the respective decree and order were heard by this Court and, on April 18, 1967, we affirmed the decree in the adoption proceedings but in the custody proceeding we held that such proceeding came within the exclusive jurisdiction of the Orphans' Court by reason of the Act of August 10, 1951,[1] and we vacated the order of the Common Pleas Court and transferred the custody proceeding to the Orphans' Court of the same County for further proceedings. See: *Commonwealth ex rel. Snellgrose v. Harris*, 425 Pa. 258, 228 A. 2d 764 (1967).

Pursuant to our determination, the matter was transferred to the Orphans' Court of Lebanon County which, after taking some additional testimony, awarded custody of the child to her natural mother. From that order the instant appeal was taken.

Thomi was born in Germany on March 5, 1955 to Anna Snellgrose, then unmarried. Believing that Dr. and Mrs. Harris were her aunt and uncle, Anna Snell-

---

[1] P. L. 1163, art. III, §301, as amended, 20 P.S. §2080.301.

grose arranged with them to come to the United States and the mother and child arrived in September of 1958. Dr. and Mrs. Harris met them and took them to the Harris home in Lebanon. After a week at the Harris home, the mother and child went to Virginia where the mother had secured employment. In the latter part of December 1958, the mother left her employment and, with the child, returned to live at the Harris home remaining there until March 1959. At that time one Luther Case, an American serviceman whom Anna Snellgrose had met in Germany, took the mother and child to his sister's home in Kalamazoo, Michigan, where they lived until Case went to Texas. Having learned that Case was married, Anna Snellgrose broke up her relationship with him and moved to an apartment owned by one Raymond Snellgrose whom Mrs. Snellgrose married on January 8, 1960; of that marriage a child named Reni was born. Snellgrose adopted Thomi who then became known as Thomi Snellgrose. Snellgrose died on January 5, 1963.

In October of 1959, learning of the impending marriage of Mrs. Snellgrose and of her financial difficulties, Dr. and Mrs. Harris offered to take Thomi into their home and keep her until after the marriage and until Mrs. Snellgrose's financial affairs were straightened out. Thomi lived at the Harris home from October 1959 until December 1961 at which time Mrs. Snellgrose came to Lebanon and took the child to live with herself and her husband.

During the early part of the summer of 1963, Mrs. Snellgrose, with Thomi and Reni, stayed at the Harris home for approximately two weeks when Mrs. Snellgrose and Reni returned to Kalamazoo. Thomi remained with Dr. and Mrs. Harris until September, 1963. In June, 1964, Thomi returned to the Harris home in Lebanon where she has remained until the

present time. Mrs. Snellgrose, by reason of her husband's death, became the sole owner of an apartment building previously owned by her husband and continued to reside there and pay off the encumbrances on that property. In June, 1964, she rented an apartment therein to one John Fluty, a married man separated from his wife. Subsequently, she sold the apartment house and with the equity received therefrom purchased a home. Learning in November 1965 that Thomi desired to remain on a permanent basis at the Harris home, Mrs. Snellgrose entered her opposition to Harris' efforts to secure custody and/or to adopt the child. In the court below and this Court the sole inquiry must be to determine which custodian would serve the best interests of this child. See: *Commonwealth ex rel. Ruczynski v. Powers,* 421 Pa. 2, 5, 219 A. 2d 460 (1966).

Upon this appeal, Dr. and Mrs. Harris urge that the best interests of the child would not be served by awarding custody of the child to Mrs. Snellgrose for three reasons: (a) that Mrs. Snellgrose has neglected Thomi and that such neglect, together with repeated immoral associations with men, indicate her unfitness to have custody of this child; (b) that the child (twelve years of age at the time of the additional hearing) has clearly stated her preference to remain with Dr. and Mrs. Harris; (c) that Mrs. Snellgrose, by reason of precarious health and inadequate finances, could not properly take care of this child.[2]

Presumptively, the interest and welfare of a child is best served when the child is in the custody of its parent or parents and, *prima facie,* a parent is entitled to the custody of his or her child. *Common-*

---

[2] The daughter Reni suffers from Marfan's Syndrome, a fact which poses a potential of greater future expense to Mrs. Snellgrose.

wealth ex rel. Bendrick v. White, 403 Pa. 55, 169 A. 2d 69 (1961). See also: Commonwealth ex rel. Harry v. Eastridge, 374 Pa. 172, 97 A. 2d 350 (1953); Brown v. Brown, 206 Pa. Superior Ct. 439, 444, 213 A. 2d 395 (1965). However, this is not a fixed or invariable rule and a parent's prima facie right to custody must yield if the child's welfare dictates that custody be given to one other than the parent. Commonwealth ex rel. McKee v. Reitz, 193 Pa. Superior Ct. 125, 128, 163 A. 2d 908 (1960); Commonwealth ex rel. Burke v. Birch, 169 Pa. Superior Ct. 537, 539, 83 A. 2d 426 (1951).

The lower court has found that there are no compelling reasons which warrant depriving Mrs. Snellgrose of the custody of Thomi. While we do not invade the fact finding province of the hearing judge, we are obliged to examine the record and reach an independent determination. Commonwealth ex rel. Bendrick v. White, supra, at p. 59; Shoemaker Appeal, 396 Pa. 378, 381, 152 A. 2d 666 (1959). See also: Orphans' Court Act of 1951, P. L. 1163, art. VII, §773, 20 P.S. §2080.773.

In our determination of the best interests and welfare of Thomi, we must view the matter with regard to the happiness, training, development and moral, physical and spiritual well-being of the child. Commonwealth ex rel. Kraus v. Kraus, 185 Pa. Superior Ct. 167, 170, 138 A. 2d 225 (1958); Shoemaker Appeal, supra, at p. 381.

After a searching examination of the instant record, we are compelled to disagree with the lower court's determination.

Mrs. Snellgrose's past and present conduct leaves much to be desired in a mother who is to provide the proper training for a teenage girl. In 1949, at the age of nineteen years and unmarried, she bore the

child of a married man in Germany; six years later, as a result of an illicit relationship with an American serviceman, she bore Thomi; and presently, she appears to be engaged in a questionable relationship with John Fluty, a married man. Even though there is no clear evidence of illicit relations between Mrs. Snellgrose and Fluty, their conduct is such as to deprive a home where a young girl is being raised a healthy moral atmosphere. On occasions Fluty has been seen leaving Mrs. Snellgrose's home at 6:35 in the morning; Mrs. Snellgrose stating this was true, explained there was no improper conduct because Fluty came to her home in the morning for coffee before going to work. Mrs. Snellgrose also testified that Mr. Fluty frequented her home and she sees him regularly and Thomi testified that she had seen her mother sitting on Fluty's lap hugging and kissing him.

Mrs. Snellgrose persisted in her relationship with Fluty even up to the time of the hearing after remand by this Court and she evinced at such hearing no intention of ceasing such conduct. Such conduct is highly improper and Thomi, an intelligent and impressionable youngster, realized its impropriety. Such conduct would have a profound and adverse effect upon her concept of moral values and might even instill in her contempt for her mother if she were required to live in the midst of such an atmosphere.

It is true that past moral lapses are not sufficient to deprive a mother of the custody of her child (*Commonwealth ex rel. Batch v. Barber*, 161 Pa. Superior Ct. 82, 54 A. 2d 47 (1947)) but, when such conduct is persistent and flagrant, it is impossible to disregard it in considering what is best for the child (*Commonwealth ex rel. Tavoletti v. Tavoletti*, 203 Pa. Superior Ct. 4, 198 A. 2d 427 (1964); *Commonwealth ex rel. Burke v. Birch*, 169 Pa. Superior Ct. 537, 83 A.

2d 426 (1951)). The present conduct of Mrs. Snellgrose casts grave doubt upon any reform in her concept of standard moral practice.

As the court very aptly stated in *Commonwealth ex rel. Davis v. Davis,* 97 Pa. Superior Ct. 442, 446, 447 (1929): "We believe that a woman who behaved so is not as fit a person to bring up her child as the man who has behaved as the relator in this case has done. Her standard of morals, the value in which she holds the marital relations and marriage oath is not high and it would be most unfortunate were they passed on to this daughter. We realize that the child is young, but we also believe that she is impressionable and would, even at her tender age, consciously or subconsciously be influenced by the characters and actions of those with whom she would be living in the family relation."

*Commonwealth ex rel. Staunton v. Austin,* 209 Pa. Superior Ct. 187, 223 A. 2d 892 (1966), relied upon by Mrs. Snellgrose, presented an unusual set of facts and is clearly distinguishable from the case at bar. In *Staunton,* although the natural mother was living in an illicit relationship, it was productive of five children and proved to be a durable *de facto* relationship.

Moreover, Thomi has expressed unequivocally her desire to remain with Dr. and Mrs. Harris. It is well settled that the preference of an intelligent child of sufficient maturity is to be considered in determining custody. *Commonwealth ex rel. Sage v. Sage,* 160 Pa. 399, 28 A. 863 (1894); *Brown v. Brown,* 206 Pa. Superior Ct. 439, 213 A. 2d 395 (1965); *Commonwealth ex rel. McKee v. Reitz,* 193 Pa. Superior Ct. 125, 130, 163 A. 2d 908 (1960). We are satisfied that Thomi, who was eleven when she testified at the original hearing and twelve when she testified at the second hear-

ing, is a highly intelligent and mature little girl. The hearing judge did not give much weight to her testimony because he apparently felt *she was induced to so testify by the Harrises.*[3]

Thomi's preference appears to be well-founded. While Mrs. Snellgrose did correspond and send gifts to Thomi during her stay at the Harris home, the personal contacts between the two were minimal. Even when Mrs. Snellgrose visited Lebanon she many times neglected Thomi; illustrative is the fact that she spent most of her time with Fluty during their visit in August, 1965, even though she had not seen Thomi since June, 1964. The mother's failure to provide her child with her daily physical and emotional needs created a void which was filled admirably by the Harrises. At the same time, Thomi has become extremely aware of her mother's activities with Fluty and realized the impropriety of the whole affair. This is an additional reason why Thomi prefers to remain with the Harrises.

Under the circumstances, we have no alternative but to attach great weight to Thomi's wishes. Everyone involved is agreed that Dr. and Mrs. Harris are suitable custodians. As the lower court stated "Dr. and Mrs. Harris have unquestioned love and affection for Thomi. They are suitable custodians. They have supplied her with love and affection and furnished her material needs."

Appellants assign as a basis for not awarding custody of Thomi to Mrs. Snellgrose the latter's precari-

---

[3] Counsel had objected to the taking of Thomi's testimony to determine her wishes and also objection was made to the taking of her testimony in the judge's chambers out of the mother's presence. This child was entitled to have her preferences heard as noted. Secondly, because of the nature of these proceedings there is no objection in having the child's testimony taken out of the presence of the contending parties. Counsel was present and had an opportunity to examine the witness. See: *Willingham v. Willingham*, 192 Ga. 405, 15 S.E. 2d 514 (1941) and 67 C.J.S. §13, p. 679.

ous health and inadequate finances; with this contention we disagree. Mrs. Snellgrose did have a kidney removed and a series of illnesses some of which required surgery. However, at the additional hearing, Dr. Suter after conducting a physical examination of Mrs. Snellgrose, concluded that she was in good health. She is able to return to work as a hospital laboratory technician and with her salary plus social security payments she would be able to provide an adequate sum for herself and two daughters. Thus, if these were the only reasons why Mrs. Snellgrose should be denied custody of Thomi, we would have to grant her petition. However, for the reasons heretofore stated we do not believe that she is presently entitled to custody of Thomi.

Appellee argues that, although appellants contend that she is unfit to have custody of Thomi, they have never sought to have Reni taken from her mother. Appellants' position is understandable since they have had Thomi in their custody even before Reni's birth, they have provided Thomi with her material and spiritual needs and have become very attached to her as Thomi has become attached to them. They never had Reni in their custody.[4] Also, it must be understood that it was Mrs. Snellgrose who is seeking to regain custody of her child from the appellants and it is not the appellants seeking to have Thomi taken from her mother's home.

---

[4] It is the policy of the law that children of the same family be kept together. But this rule is not fixed or absolute. Each case must depend on its own facts. *Commonwealth ex rel. McKee v. Reitz*, 193 Pa. Superior Ct. 125, 129. Thomi had only lived with Reni for a short period of time and she testified that she doesn't know Reni very well. Moreover, the factors previously outlined far outweigh the policy of the law which seeks to keep children of the same family together.

From an independent examination of the record, then, we must disagree with the lower court's conclusion that there are no compelling reasons which warrant depriving Mrs. Snellgrose of custody of her child. To grant Mrs. Snellgrose custody of Thomi would seriously jeopardize Thomi's future well-being and development and happiness.[5] We are not prepared to expose Thomi to such a rsk.

Order reversed and custody of Thomi Snellgrose awarded to appellants.

---

CONCURRING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with Justice JONES's Opinion with the following exception:

It will often be in the best interest of the child for the hearing Judge to examine the child in his chambers *without the presence* of the child's parents, or of the person seeking adoption or custody, or of counsel for any of the parties. The question of custody, especially if the issue is between parents and especially if the child is young, raises delicate issues which may seriously affect a child's affection, or love and well-being for many years to come.

I disagree with the dissenting Opinion of Justice ROBERTS. It overlooks what other members of the Court have likewise sometimes overlooked, namely, there is a distinction between a true finding of fact—which, if supported by adequate competent evidence, especially when confirmed or approved by a Court en banc or a lower Court, will not be disturbed on appeal except for clear error—and findings which are only inferences or deductions from other facts or conclusions from facts or from reasoning.

---

5 Thomi testified that she would be very, very unhappy if she were ordered to live with her mother.

An appellate Court is not bound to accept so-called findings of fact which are in reality deductions, inferences or conclusions found by the lower Court: *Selheimer v. Manganese Corp.,* 423 Pa. 563, 581, 224 A. 2d 634; *Watt Estate,* 409 Pa. 44, 50, 185 A. 2d 781; *Liggins Estate,* 393 Pa. 500, 509, 143 A. 2d 349; *Pruner Estate,* 400 Pa. 629, 637, 162 A. 2d 626; *Gongaware's Estate,* 265 Pa. 512, 514, 109 Atl. 276. This distinction has been overlooked by the dissenting Opinion.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

In overturning the decision of the orphans' court, I believe that this Court has wrongly extended its scope of review and decided incorrectly factual issues which an appellate court should not be determining. Accordingly, I dissent.

The majority states that "while we do not invade the fact finding province of the hearing judge, we are obliged to examine the record and reach an independent conclusion." Of course we should *examine* the record. And I agree that the majority has not invaded the "fact finding province" of the orphans' court— it has ignored it altogether. It is not entirely clear what is the scope of review by this Court of orphans' court factual determinations; but it must be that the orphans' court findings of fact are entitled to some weight, especially where credibility is at issue.

Although it is true that *Commonwealth ex rel. Bendrick v. White,* 403 Pa. 55, 169 A. 2d 69 (1961) indicates a broad scope of review of orphans' court determinations, more recent decisions cast doubt on *Bendrick's* viability. In *Hookey Adoption Case,* 419 Pa. 583, 589, 215 A. 2d 860, 862 (1966), Mr. Justice JONES, writing for a unanimous court, indicated that this Court's decision was based on whether "there was sufficient evidence to sustain the finding . . . ."

In *Dettra Will,* 415 Pa. 197, 201, 202 A. 2d 827, 830 (1964), this Court, again per Mr. Justice JONES, stated that in a will case the orphans' court decision as to testamentary capacity and undue influence is "controlling provided such findings are based upon legally competent and sufficient evidence and our scope of review is to determine whether the findings of fact are supported by sufficient evidence and whether the court below committed an error of law or abused its discretion." In a will case, the orphans' court is controlled by 20 P.S. §2080.773, just as it is in an adoption or resulting custody proceeding. 20 P.S. §2080.773 is cited by the majority here and relied on in *Bendrick,* supra, to require broad review by this Court in cases of this type. But to say that the exact same statutory language demands broad review of orphans' court decisions in one type of case but not in another is anomalous. The statute itself in no way distinguishes between will and adoption custody cases, and by its terms is applicable to all "orphans' court decrees."

In *Hunter Adoption Case,* 421 Pa. 287, 218 A. 2d 764 (1966), we once again characterized our inquiry as merely whether the record could support the finding below. And in our most recent statement of this issue, in *Snellgrose Adoption Case,* 425 Pa. 258, 228 A. 2d 764 (1967) (prior disposition of current litigation), this Court, per Mr. Chief Justice BELL, again stated that "the sole question . . . is whether there is adequate evidence to support the finding of the court below . . . ."

The majority's decision in this case evidences the folly of having this Court review anew on a cold record factual findings which an orphans' court judge, by virtue both of his experience and his presence at the hearing and opportunity to observe the witnesses, is peculiarly equipped to make. The majority relies

strongly on Mrs. Snellgrose's alleged immorality. Judge GATES here found that Mrs. Snellgrose's relationship with Fluty was not "proven to be immoral nor likely to have an adverse effect on Thomi's future." Mrs. Snellgrose testified that Fluty merely stopped by for coffee on his way to work. The hearing judge *chose to believe Mrs. Snellgrose,* noting that she "testified with candor, frankness and apparent honesty about her conduct." Certainly this Court, reading a cold record, cannot reliably make a determination contrary to that of the orphans' court judge as to Mrs. Snellgrose's credibility.

The majority also relies on the statements of the child, which the court below dismissed as being inspired by Mr. and Mrs. Harris. This Court did not have the opportunity to observe little Thomi; it cannot know, as the orphans' court judge could, if her answers appeared to be schooled. The fact that the Harrises filled a "void" is hardly relevant. That "void" was created by agreement between Mrs. Snellgrose and the Harrises. We have held previously that there was no abandonment here. Certainly the Harrises, of course with Mrs. Snellgrose's consent, were custodians, but that does not now give them the right to keep the child from her natural mother.

Accordingly, I must conclude that the majority's "independent examination of the record" is nothing more than speculation. I would much prefer to rely on the conclusions of the hearing judge who was able to observe the litigants and witnesses, especially in a situation such as this where personality and demeanor are crucial. The record certainly supports his findings, and thus, I dissent.