RUSSELL WADE BORING AND PEGGY M. BORING v. DELORES
FLORENCE MITCHELL

No. 6927DC318

(Filed 13 August 1969)

1. **Pleadings § 26— demurrer — failure to point out defect in petition**
    In this special proceeding to determine whether a child is an abandoned child within the meaning of G.S. Ch. 48, respondent's demurrer to the petition is properly overruled where it does not point out any defect in the petition but merely alleges that the petition does not state sufficient facts to make out a case of abandonment.

2. **Adoption § 2; Jury § 1— motion for jury trial in District Court**
    In this special proceeding in the District Court to determine whether

a child is an abandoned child within the meaning of G.S. Ch. 48, it was not error for the trial judge in his discretion to allow petitioners' motion for a jury trial. G.S. 7A-196.

**3. Adoption § 2— abandoned child — sufficiency of evidence**

In this special proceeding to determine whether a child is an abandoned child, there was sufficient evidence in the light most favorable to petitioners that respondent, mother of the child, had wilfully forsaken her parental duties and had relinquished her parental claims for submission of the issue of abandonment to the jury.

**4. Adoption § 2; Appeal and Error § 32— abandoned child — technical error in issue submitted — harmless error**

In this special proceeding to determine whether a child is an abandoned child within the meaning of G.S. Ch. 48, the statute requiring an abandonment six months immediately prior to the institution of the proceeding, respondent was not prejudiced by technical error of the court in submitting the issue of abandonment to the jury with a final date of 10 September 1968 when the proceeding was actually commenced on 12 September 1968, there being no evidence that respondent did anything during those two days which would have affected the result of the trial, and respondent having failed to object at the trial to the submission of that issue.

**5. Appeal and Error §§ 31, 50— slight misstatement of evidence — duty to call to court's attention**

A slight inadvertence by the court in recapitulating the evidence must be called to the attention of the court in time for correction.

APPEAL by defendant from *Friday, J.,* 19 February 1969 Civil Session of District Court held in CLEVELAND County.

This is a special proceeding brought to determine whether Sabrina Sheehan Mitchell (Sabrina) is an abandoned child within the meaning of Chapter 48 of the General Statutes of North Carolina.

The action was initiated by Russell Wade Boring (Russell) and Peggy M. Boring (Peggy) by filing a "Petition for Determination of Abandonment" with the Clerk of Superior Court of Cleveland County on 10 September 1968. Summons was issued herein on 12 September 1968. In the petition it is alleged that the petitioners had filed a petition for adoption of Sabrina in Special Proceeding # 4436 in Superior Court in Cleveland County, that Delores Florence Mitchell (Delores) had wilfully abandoned her daughter, Sabrina (referred to as Sabrina Sheehan Boring in the petition), on or about 15 January 1968 and that said abandonment had existed for more than six months immediately preceding the institution of the action. Delores Florence Mitchell filed an answer denying the material allegations of the petition and sought to have custody of Sabrina

awarded to her. The action was transferred to the District Court, for trial. On written motion of petitioners, trial was by jury.

At the trial, the evidence for the petitioners tended to show that Delores, who was unmarried, gave birth to Sabrina on 22 December 1967. The child was born in California where two sisters of Delores were living at the time. Both sisters offered to assist Delores with the child. Shortly after the birth of Sabrina, Delores, who was unemployed, said she could not afford to keep the baby and phoned petitioners at their home in Shelby, North Carolina, to tell them that she wanted to give them the baby. She told them that she wanted them to love and trust Sabrina and to give her a good home and that this would be a permanent arrangement. Peggy flew to California to get Sabrina about 12 January 1968. Peggy took with her a consent to adoption to be signed by Delores. On cross-examination, Peggy testified that "Delores "signed a paper to consent for me to adopt that baby." However, Peggy, on further cross-examination, said four times that Delores did not sign the consent. Russell testified on cross-examination concerning whether Delores had consented to the adoption — "[i]n June when I talked to her I asked her to sign a consent to adopt. She did not refuse to sign it, she had already signed one which I have but it wasn't notarized." Upon further cross-examination Russell testified:

> "It was signed, witnessed but not notarized. I read it, is said on there that if she did sign it she had six months to withdraw it, it was also nine months after she signed it."

Peggy flew back to North Carolina with Sabrina about 15 January 1968. Soon thereafter, Delores went to work for Saturn Airways as a stewardess. From 15 January 1968 to 21 September 1968 Delores never visited Sabrina nor contributed toward her support. During this period Delores sent Sabrina a book of poems upon which was written "[t]o my precious little niece, Sabrina. Love auntie Dee. 1-22-68"; a stuffed animal; and a little suit. Delores never asked for her child back. Delores came to North Carolina on the 20th or 21st day of September 1968 and was served with summons on 25 September 1968.

The evidence for respondent tended to show that she has never been married. Peggy is her sister. Peggy did not know of the birth of Sabrina until their sister, Norma Rae Bryant, informed her of the birth the first week of January 1968. During a phone conversation the early part of January, Peggy called Delores and offered to adopt Sabrina. Delores told her that she did not know what she would do, but the next night Delores told Peggy that she could not

give the baby up for adoption, but that Peggy could take Sabrina back to North Carolina, love her, trust her and give her a good home until she, Delores, was able to bring her back. During this period Delores was unemployed but soon thereafter obtained a job with Saturn Airways which pays her between $500.00 and $1,400.00 per month. Delores did not sign the consent to adoption at the time Peggy was in California but later did sign it and send it to Peggy. The consent was improperly executed in that she did not sign it before a notary public, and it was returned to Delores for proper execution. Delores did not sign the new consent form but brought it with her when she came to North Carolina in September 1968. When Delores arrived at the petitioner's house, she was attempting to get her child back as she had never intended to give her up to the petitioners or anyone else. Russell Boring struck the respondent and ordered her out of the house after telling her that she owed petitioners $7,000.00 for taking care of Sabrina. Respondent also testified that she called the petitioners many times to ask about Sabrina. Delores further testified:

"I did not abandon my child. When I turned my child over to Mrs. Boring I had no intention of abandoning her. When I gave my child to Mrs. Boring I told her that when I was financially able to support her I wanted her back. I am now financially able. I have asked Mrs. Boring for my child back four different times. I want her back now."

The following issue was submitted to the jury and answered in the affirmative:

"Did Delores F. Mitchell wilfully abandon the child, Sabrina Sheehan, for at least six consecutive months immediately prior to September 10, 1968?"

From the judgment declaring Sabrina to be an abandoned child and transferring the case to the Clerk of the Superior Court for further proceedings, the respondent appealed to the Court of Appeals, assigning error.

*Hamrick, Mauney & Flowers by Fred A. Flowers for petitioner appellees.*

*Reuben L. Elam for respondent appellant.*

MALLARD, C.J.

Defendant asserts that the question involved on this appeal is:

"Did the Court below commit reversible error in sustaining the

verdict of the jury and signing judgment declaring Sabrina Shehan, the infant child of the defendant, to be an abandoned child within the meaning of Chapter 48 of the General Statutes of North Carolina?"

In this case, we are of the opinion and so hold that the trial court did not commit reversible error.

Respondent does not now contend that prejudicial error was committed in transferring this case to the District Court. See G.S. 7A-242.

[1] Respondent's assignment of error No. 4 relates to the trial court's overruling of her demurrer ore tenus to the petition, which was as follows:

"The defendant, through her counsel, demurs ore tenus on the grounds that the facts set out in the complaint do not allege sufficient facts to make out a case of abandonment."

In the case of *Berry v. City of Wilmington,* 4 N.C. App. 648, 167 S.E. 2d 531 (1969), we find the following:

"In G.S. 1-128 it is provided, among other things, 'The demurrer must distinctly specify the grounds of objection to the complaint, or it may be disregarded.' This section applies to all demurrers, written or oral. *Adams v. College,* 247 N.C. 648, 101 S.E. 2d 809; *Insurance Co. v. Blythe Brothers Co.,* 260 N.C. 69, 131 S.E. 2d 900. A demurrer which merely charges that the complaint does not state a cause of action is broadside and will be disregarded. *Pratt v. Bishop,* 257 N.C. 486, 126 S.E. 2d 597. 'Also, a demurrer for failure of the complaint to state a cause of action is properly overruled when the demurrer does not point out any defect in the complaint which would entitle defendants to a dismissal of the action.' 6 Strong, N.C. Index 2d, Pleadings § 21, p. 337. *McPherson v. Burlington,* 249 N.C. 569, 107 S.E. 2d 147."

In the present case, the demurrer does not point out any defect in the petition but merely alleges that it does not state "sufficient facts to make out a case of abandonment." It was not error to overrule this broadside demurrer.

[2] Respondent's assignment of error No. 5 raises the question of whether it was error for the trial court to allow petitioner's motion to have the issue of abandonment decided by a jury.

Respondent asserts that the petitioners waived their right to a jury and cite G.S. 7A-196 as authority. G.S. 7A-196 provides in pertinent part:

"(d)   The failure of a party to file a demand as required by
this section constitutes a waiver by him of trial by jury. A de-
mand for trial by jury may not be withdrawn without the con-
sent of the parties. Notwithstanding the failure of a party to
demand a jury in an action in which demand might have been
made of right, the court in its discretion, upon motion of a
party, may order a trial by jury of any or all issues."

Upon motion of the petitioners for a jury trial, it was not error
for the trial judge in his discretion to allow the motion. No abuse
of discretion is alleged or shown.

**[3]**   Assignments of error No. 7 and No. 9 relate to the denial of
respondent's motions for nonsuit made at the close of petitioner's
evidence and at the close of all the evidence. In the case of *Pratt
v. Bishop*, 257 N.C. 486, 126 S.E. 2d 597 (1962), we find the follow-
ing language:

"Abandonment requires a wilful intent to escape parental re-
sponsibility and conduct in effectuation of such intent. *In re
Bair's Adoption*, 393 Pa. 296, 141 A. 2d 873. In *Bair's* case the
Pennsylvania Court said this:

'A parent's intent to abandon a child soon becomes evident,
especially in the case of an infant, by reason of the inexorable
circumstances attending its physical being. A child's natural
needs for food, clothing and shelter demand that someone im-
mediately assume the attendant responsibility which an aban-
doning parent has ignored; and, that responsibility endures
constantly. It does not await the capricious decision of an
uncertain parent, perhaps, years later. * * *

'Abandonment is not an ambulatory thing the legal effects of
which a delinquent parent may dissipate at will by the expres-
sion of a desire for the return of the discarded child.' * * *

To constitute an abandonment within the meaning of the adop-
tion statute it is not necessary that a parent absent himself con-
tinuously from the child for the specified six months, nor even
that he cease to feel any concern for its interest. If his conduct
over the six months period evinces a settled purpose and a wil-
ful intent to forego all parental duties and obligations and to
relinquish all parental claims to the child there has been an
abandonment within the meaning of the statute."

In the present case, there was sufficient evidence in the light
most favorable to the petitioners that respondent had wilfully for-

saken her parental duties and had relinquished her parental claims. It was not error to overrule respondent's motions of nonsuit.

[4]   Respondent contends that it was error to submit the issue of abandonment to the jury with the final date of 10 September 1968. She contends that the statute requires an abandonment six months immediately prior to the institution of the proceeding. Summons in this case was not issued until 12 September 1968. Contested special proceedings are commenced in the same manner as civil actions. G.S. 1-394. A civil action is commenced by the issuance of summons. G.S. 1-88. This present action, therefore, commenced on 12 September 1968.

> "A new trial will not be granted for mere technical error which could not have affected the result, but only for error which is prejudicial or harmful, amounting to the denial of a substantial right." 1 Strong, N.C. Index 2d, Appeal and Error, § 47, p. 192.

In the present case, there is absolutely no evidence that this two-day difference affected the result of the trial. Both dates are more than six months after the alleged abandonment. There is no evidence that Delores F. Mitchell did anything during those two days which would have affected the outcome of the trial. There is absolutely no showing that the respondent was in any way prejudiced by this technical error. In addition, respondent did not object to the submission of the issue. After the trial the respondent attempted to take exception to the issue submitted. This comes too late. In McIntosh, N.C. Practice 2d, § 1353, it is said:

> "It is sufficient if the issues submitted will allow the parties to present their contentions fully; and if a party is dissatisfied with the form of the issues or desires additional issues, he should raise the question at once by objecting or by presenting the additional issues. If the parties consent to the issues submitted, or *do not object at the time or ask for different or additional issues, the objection cannot be made later;* but it is not necessary to go through the formality of presenting an issue when the court has ruled that it would not be submitted, or has intimated that there was no evidence to sustain it." (Emphasis added).

[5]   Respondent also contends that the court misstated the evidence and thus committed prejudicial error. This misstatement of the evidence is asserted to have been when the court said that Peggy testified "that the papers were served upon Delores on 10 Septem-

ber 1968." This slight inadvertence was not called to the attention of the court at the time so that it could be corrected. The rule with respect to slight misstatements of the evidence is set out in *State v. Goines,* 273 N.C. 509, 160 S.E. 2d 469 (1968), where it is said:

"Slight inadvertencies in recapitulating the evidence or stating contentions must be called to the attention of the court in time for correction. Objection after verdict comes too late."

The respondent also asserts that the trial judge committed prejudicial error in instructing the jury. We have carefully read the charge and find no prejudicial error therein.

Defendant has abandoned assignments of error # 1, 2, 3, 6, and 8. There are other assignments of error brought forward and argued by respondent which are without merit and require no discussion.

For the reasons stated, in the trial we find

No error.

BRITT and PARKER, JJ., concur.