IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-101

No. 371A20

Filed 27 August 2021

IN THE MATTER OF: S.C.L.R.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) and on writ of certiorari pursuant to N.C.G.S. § 7A-32(b) to review an order entered on 21 May 2020 by Judge Larry J. Wilson in District Court, Cleveland County. This matter was calendared for argument in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellees.*

*Sydney Batch for respondent-appellant father.*

*Jeffrey L. Miller for respondent-appellant mother.*

BARRINGER, Justice.

¶ 1     Respondents appeal from the trial court's order terminating their parental rights to S.C.L.R. (Sue).[1] After careful review, we affirm the order as to respondent-mother and reverse the order as to respondent-father.

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading.

## I.  Background

Petitioners brought Sue home from the hospital after her birth in the spring of 2017. Petitioners came to provide for Sue through a friend of petitioners who worked with Sue's paternal grandmother. At the time of Sue's birth, both respondents were incarcerated, and the paternal grandmother wanted to find an alternative to foster care. Respondents assigned temporary custody of Sue to petitioners pursuant to a consent order entered on 15 May 2017. Permanent custody was granted by the trial court to petitioners in Cleveland County File No. 17-CVD-814 (the Custody Action) by order signed on 27 June 2019. Sue has been in petitioners' care and custody since they took her home from the hospital in May 2017.

Petitioners filed a verified petition to terminate respondent-mother's parental rights to Sue on 5 August 2019. Petitioners subsequently filed an amended verified petition to terminate respondent-mother's and respondent-father's parental rights to Sue on 26 August 2019. Petitioners sought termination pursuant to N.C.G.S. § 7B-1111(a)(4) and (7).

The trial court held the termination-of-parental-rights hearing on 26 February 2020. Following the hearing, the trial court entered an order on 21 May 2020 in which it determined that grounds existed to terminate respondents' parental rights pursuant to the grounds alleged in the petition. The trial court further concluded it

was in Sue's best interests that respondents' parental rights be terminated. Accordingly, the trial court terminated respondents' parental rights.

¶ 5        Respondents gave timely notice of appeal pursuant to N.C.G.S. § 7B-1001(a1)(1). Respondent-mother's notice of appeal, however, improperly designated the Court of Appeals as the court to which appeal was being taken. Respondent-mother filed an amended notice of appeal on 25 June 2020 in which she correctly designated this Court as the court to which appeal was being taken. On 22 September 2020, respondent-mother filed a petition for a writ of certiorari seeking review of the trial court's order terminating her parental rights. On 19 October 2020, we allowed respondent-mother's petition for writ of certiorari.

## II.    Compliance with N.C.G.S. § 7B-1104(2)

¶ 6        Respondents first argue that the trial court lacked jurisdiction to terminate their parental rights because the verified petition fails to allege "facts sufficient to identify the petitioner or movant as one authorized by [N.C.]G.S. [§] 7B-1103 to file a petition or motion." N.C.G.S. § 7B-1104(2) (2019). Because we conclude that the allegations in the petition are sufficient to comply with N.C.G.S. § 7B-1104(2) and respondents do not dispute that petitioners in fact were persons authorized by N.C.G.S. § 7B-1103(a) to file a petition for termination of respondents' parental rights, we decline to address whether the legislature has limited the trial court's

jurisdiction to petitions filed with allegations sufficient to comply with N.C.G.S. § 7B-1104(2).

¶ 7     Subsection 7B-1103(a) of the General Statutes of North Carolina provides the following:

> (a)  A petition or motion to terminate the parental rights of either or both parents to his, her, or their minor juvenile may only be filed by one or more of the following:
>
> . . . .
>
> (5)  Any person with whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the petition or motion.

N.C.G.S. § 7B-1103(a) (2019).

¶ 8     A petition or motion to terminate parental rights shall state "[t]he name and address of the petitioner or movant and facts sufficient to identify the petitioner or movant as one authorized by [N.C.]G.S. [§] 7B-1103 to file a petition or motion." N.C.G.S. § 7B-1104(2).

¶ 9     Respondents have not challenged the trial court's finding in the termination-of-parental-rights order that Sue has resided with petitioners since she came home from the hospital after her birth in May 2017. Respondents also testified to this effect at the termination-of-parental-rights hearing. Unchallenged findings are deemed to be supported by the evidence and are binding on appeal. *See In re Z.L.W.*, 372 N.C. 432, 437 (2019). Thus, this appeal does not involve a dispute concerning whether

petitioners are in fact persons "with whom the juvenile has resided for a continuous period of two years or more next preceding the filing of the petition or motion." N.C.G.S. § 7B-1103(a)(5). Consequently, whether petitioners were authorized by statute to file a petition for termination of respondents' parental rights is not at issue. Instead, this appeal only raises whether a statutory pleading requirement was met.

When we look at the petition, it is apparent that petitioners did provide their names and address but did not include an allegation using the specific language of N.C.G.S. § 7B-1103(a)(5). However, as N.C.G.S. § 7B-1104(2) does not require specific language for compliance, our analysis does not end here. *See* N.C.G.S. § 7B-1104(2).

Instead, we must consider whether the provision of petitioners' names, address, and other facts in the petition are "sufficient to identify . . . petitioner[s] as . . . one authorized by [N.C.]G.S. [§] 7B-1103 to file a petition [for termination of parental rights]." N.C.G.S. § 7B-1104(2). Among other things, the petition alleged "[t]hat custody was given to the [p]etitioners in Cleveland County File No.: 17-CVD-814 by Order of this [c]ourt dated February 12, 2019 that was subsequently filed June 24, 2019; that since prior to the entry of this Order, the respondents have not had any contact with the minor child." The petition also identified that Sue resides with petitioners in Cleveland County.

¶ 12    In the Custody Action, respondents are the defendants, and petitioners are the plaintiffs.[2] Petitioners commenced the Custody Action by complaint after Sue's birth when Sue remained in the hospital. Respondents accepted service, and petitioners and respondents consented to the entry of an order by the trial court in the Custody Action on 15 May 2017. The trial court found "[t]hat the parties agree that the minor child should be placed in the temporary legal and physical care, custody[,] and control of the [petitioners], subject to the [respondents] exercising supervised visitation upon their release [from incarceration]" and ordered "[t]hat the [petitioners] shall have the temporary legal and primary physical care, custody[,] and control of [Sue] subject to [respondents] exercising supervised visitation for a minimum of one hour each week upon [their] release." Later, upon petitioners' request, the parties were heard by the trial court on 12 February 2019. The trial court upon hearing the testimony of the parties and reviewing the evidence found that Sue "ha[d] been placed with [petitioners] since she was an infant," and petitioners "have provided excellent care for [Sue], since being vested with temporary custody." Thereafter, the trial court ordered that "[petitioners] shall have the permanent sole care, custody[,] and control of [Sue]." The order was signed on 27 June 2019.

---

[2] This Court has ordered that the Complaint, dated 15 May 2017; Acceptance of Service by respondent-mother, dated 15 May 2017; Acceptance of Service by respondent-father, dated 15 May 2017; Order, dated 15 May 2017; and Custody Order, dated 27 June 2019, from Cleveland County File No. 17-CVD-814 be added to the record on appeal, pursuant to Rule 9(b)(5)(b) of the North Carolina Rules of Appellate Procedure.

Since the foregoing findings of fact and orders of the trial court in the file identified by the petition establish that petitioners have had Sue in their legal care, custody, and control since 15 May 2017 and the petition to terminate the parental rights of respondents was filed on 26 August 2019, we conclude the petition contains "facts sufficient to identify the petitioner or movant as one authorized by [N.C.]G.S. [§] 7B-1103 to file a petition or motion." N.C.G.S. § 7B-1104(2). Specifically, the aforementioned facts reflect that Sue "has resided [with petitioners] for a continuous period of two years or more next preceding the filing of the petition." N.C.G.S. § 7B-1103(a)(5). Thus, we find no merit in respondents' first argument.

### III.   Challenges to Findings of Fact and Conclusions of Law

Our Juvenile Code provides for a two-step process for the termination of parental rights—an adjudicatory stage and a dispositional stage. N.C.G.S. §§ 7B-1109, 1110 (2019). At the adjudicatory stage, the petitioner bears the burden of proving by clear, cogent, and convincing evidence the existence of one or more grounds for termination under N.C.G.S. § 7B-1111(a). N.C.G.S. § 7B-1109(e), (f). If the trial court finds the existence of one or more grounds to terminate the respondent's parental rights, the matter proceeds to the dispositional stage where the trial court must determine whether terminating the parent's rights is in the juvenile's best interests. N.C.G.S. § 7B-1110(a).

We review a trial court's adjudication under N.C.G.S. § 7B-1111 "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Montgomery*, 311 N.C. 101, 111 (1984). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19 (2019). Unchallenged findings are deemed to be supported by the evidence and are binding on appeal. *In re Z.L.W.*, 372 N.C. at 437.

As pertinent to both respondents' arguments on appeal, the trial court's termination-of-parental-rights order found that:

> 2.     The [r]espondent[-mother] is a resident of Cleveland County, North Carolina.
>
> 3.     The respondent[-father] is currently incarcerated in Piedmont Correctional Institut[ion] in Salisbury, North Carolina.
>
> . . . .
>
> 5.     This action was filed on August 26, 2019 by the petitioners . . . .
>
> . . . .
>
> 7.     The [c]ourt finds that custody was given to the [p]etitioners in Cleveland County File No.: 17-CVD-814 by Order of this [c]ourt dated February 12, 2019 that was subsequently filed June 24, 2019; that since prior to the entry of this Order, the respondents have not had any contact with the minor child, and since the time the child was taken into physical custody of the [p]etitioners[,] the child has resided with the [p]etitioners; that the minor child has resided with the petitioners since she initially came home from the hospital after her birth.

8.      The [c]ourt would find that the [r]espondents have had no meaningful contact with the minor child; that neither respondent has . . . supported the minor child financially or emotionally and has not bonded with the minor child; that the respondent[-]father is currently incarcerated with a projected release date of February 2026; that given his length of incarceration along with the impossibility of him being an involved role in the minor child's life, the minor child needs stability; that he has abandoned the minor child and it is also in the minor[ ] child's best interests to have permanence with the [p]etitioners.

9.      That the respondent[-]mother has struggled ongoing with substance abuse issues and has abandoned the minor child; that she has also failed to support the minor child's needs financially; she has not had any visitation with the minor child dating back to November of 2018, 12 months prior to the filing of this action. She testified to being gainfully employed but has not provided any financial support for the well-being of the minor child whatsoever.

10.      That grounds pursuant to N.C.[G.S.] [§] 7B-1111(a)(4) and 7B-1111(a)(7) exist as evidenced by the testimony elicited and findings of fact set forth above.

      . . . .

12.      The [c]ourt would find the grounds for abandonment and failure to provide support stated in the petition have been proven and would find therefore that grounds for termination of parental rights exists as alleged and proven.

The trial court then in conclusion of law three, concluded based on the aforementioned findings of fact that, "[a]t the time of the filing of this action, the

respondent[-]father and respondent[-]mother have willfully abandoned the child for at least six consecutive months immediately preceding the filing of this petition; ha[ve] willfully failed without justification to pay for the care and support of the minor child; [and] that the respondents have neglected the minor child."

## A. Respondent-mother's Arguments

¶ 18    Respondent-mother challenges the trial court's conclusion that the ground of willful abandonment pursuant to N.C.G.S. § 7B-1111(a)(7) existed by first arguing that there are no findings of fact indicating that respondent-mother's conduct was willful as none of the trial court's findings of fact contain the word "willful."

¶ 19    A trial court may terminate parental rights pursuant to this statutory ground when "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion." N.C.G.S. § 7B-1111(a)(7) (2019). The willfulness of a parent's conduct is a question of fact to be determined by the trial court from the evidence and is not a conclusion of law. *In re K.N.K.*, 374 N.C. 50, 53 (2020). Regardless of the label given by the trial court, this Court is "obliged to apply the appropriate standard of review to a finding of fact or conclusion of law." *In re J.S.*, 374 N.C. 811, 818 (2020). Thus, the trial court's placement of a finding of willfulness in its conclusions of law is immaterial to our analysis. *Id.*

¶ 20        Because the trial court did find that "[a]t the time of the filing of this action, the . . . respondent[-]mother ha[s] willfully abandoned the child for at least six consecutive months immediately preceding the filing of this petition," albeit labeled as a conclusion of law, respondent-mother's argument that the trial court's termination-of-parental-rights order lacked a finding of willfulness is without merit.[3]

¶ 21        Next, respondent-mother challenges portions of findings of fact 7, 8, and 9 on the basis that "[t]he dates and reasons for [respondent-mother's] lack of contact [with Sue] are not stated, explained, or resolved by the trial court in any manner." Respondent-mother does not challenge the findings of fact for lack of evidentiary support but rather asserts that "[t]here are potential explanations which could be made which would be inconsistent with a willful intent to abandon Sue."

¶ 22        As findings not challenged for their lack of evidentiary support are deemed to be supported by the evidence and are binding on appeal and because respondent-mother has not challenged the evidentiary basis for any of the findings of fact, we must consider all findings of fact binding on appeal as to respondent-mother. *See In re Z.L.W.*, 372 N.C. at 437. Yet, even if challenged by respondent-mother for lack of evidentiary support, the testimony at the termination hearing supports the trial court's findings.

---

[3] Unlike respondent-father, respondent-mother did not challenge the evidentiary basis for a finding of willfulness, even as an alternative argument. Her argument on appeal as to willfulness is limited to the absence of a finding of willfulness.

¶ 23    Petitioner Mr. C. testified that the last contact respondent-mother had with Sue was 1 November 2018 and that respondent-mother had not reached out by telephone, social media, or any other type of contact to try to have contact with the child after that date. Respondent-mother also testified that she had not had any contact with Sue since 1 November 2018 and acknowledged that she knew where petitioners resided and did not file anything regarding visitation with Sue. Respondent-mother also testified that she had last reached out to petitioners regarding the minor child in August 2019, but then changed her story, later testifying that she had reached out by text every month since August 2019. When questioned, she conceded that she had no documentation or proof to support her claim of texting petitioners and admitted that she was served with the petition in this matter in August 2019.[4] Mr. C. testified that petitioners are the sole means of financial support for Sue and neither respondent has provided financial support or any other support. Respondent-mother agreed, testifying that she had not done anything to support the child, financially or otherwise, and acknowledged she had not sent any letters, cards,

---

[4] As the amended petition was filed on 26 August 2019, we consider for this matter the determinative period for assessing N.C.G.S. § 7B-1111(a)(7) to be 26 February 2019 to 26 August 2019. *See In re N.D.A.*, 373 N.C. 71, 77 (2019) ("[A]lthough the trial court may consider a parent's conduct outside the six-month window in evaluating a parent's credibility and intentions, the 'determinative' period for adjudicating willful abandonment is the six consecutive months preceding the filing of the petition." (quoting *In re D.E.M.*, 257 N.C. App. 618, 619 (2018))).

or anything else to Sue. Respondent-mother, however, had been and was gainfully employed.

Because the testimony provides clear, cogent, and convincing evidence to support the trial court's findings, if respondent-mother had challenged the evidentiary basis of the findings, the findings of the trial court would still be conclusive as to respondent-mother even though her testimony might sustain findings to the contrary. *See In re J.A.M.*, 370 N.C. 464, 466–67 (2018) (per curiam) (reversing the Court of Appeals decision for misapplying the standard of review for challenged findings of fact). It is the province of the trial court "to pass upon the credibility of the witnesses," determine "the weight to be given their testimony," and ascertain "the reasonable inferences to be drawn therefrom." *In re D.L.W.*, 368 N.C. 835, 843 (2016) (cleaned up).

Respondent-mother's argument, however, instead challenges the inadequacy of the findings of fact to support the trial court's conclusion of law that the ground for termination pursuant to N.C.G.S. § 7B-1111(a)(7) exists. We review de novo whether the findings of fact to which we are bound support the conclusion of law. *See, e.g., In re C.B.C.*, 373 N.C. at 19; *In re Moore*, 306 N.C. 394, 404 (1982). To support termination pursuant to N.C.G.S. § 7B-1111(a)(7), the trial court's findings of fact must show willful abandonment, which this Court has described as a determination to forego all parental duties and parental claims by withholding love, care, presence,

filial affection, support, and maintenance, *see, e.g.*, *In re A.G.D.*, 374 N.C. 317, 319–20 (2020), during the six-month period immediately preceding the filing of the petition, N.C.G.S. § 7B-1111(a)(7).

¶ 26        In this matter, the trial court found that the respondent-mother "ha[d] *willfully* abandoned [Sue] for at least six consecutive months immediately preceding the filing of this petition," and further found that respondent-mother "ha[d] not had any contact with [Sue since prior to 12 February 2019]," "had no meaningful contact with [Sue]," "ha[d] not supported [Sue] financially or emotionally," "ha[d] not bonded with [Sue]," "[had] be[en] gainfully employed but ha[d] not provided any financial support for the well-being of [Sue] whatsoever," "ha[d] struggled ongoing with substance abuse issues," "ha[d] not had any visitation with [Sue] dating back to November of 2018, 12 months prior to the filing of this action," and "[was] a resident of Cleveland County, North Carolina" where petitioners with Sue also resided. (Emphasis added.)

¶ 27        Here, the trial court's findings of fact support the trial court's conclusion of law. *See In re C.B.C.*, 373 N.C. at 23 (affirming termination of parental rights for willful abandonment where the "findings demonstrate[d] that in the six months preceding the filing of the termination petition, respondent made no effort to pursue a relationship with [the juvenile]"). Willful abandonment is generally evidenced by conduct and, as in this case, a lack of conduct. *See Pratt v. Bishop*, 257 N.C. 486, 503

(1962) ("To constitute an abandonment within the meaning of the adoption statute[,] it is not necessary that a parent absent himself continuously from the child for the specified six months, nor even that he cease to feel any concern for its interest. If his conduct over the six months period evinces a settled purpose and a wil[l]ful intent to forego all parental duties and obligations and to relinquish all parental claims to the child[,] there has been an abandonment within the meaning of the statute."). "Abandonment is not an ambulatory thing the legal effects of which a delinquent parent may dissipate at will by the expression of a desire for the return of the discarded child." *Id.* at 502 (quoting *In re Blair's Adoption*, 141 A.2d 873, 879 (Pa. 1958)). Notably, respondent-mother "[b]y h[er] own admission . . . had no contact with [Sue] during the statutorily prescribed time period." *In re E.H.P.*, 372 N.C. 388, 394 (2019) (rejecting respondent's argument that his inaction was justifiable on account of a temporary custody judgment, "conclud[ing] that respondent's conduct me[t] the statutory standard for willful abandonment," and "affirm[ing] the trial court's adjudication pursuant to N.C.G.S. § 7B-1111(a)(7)"). The trial court's findings of fact reflect that respondent-mother "failed to do anything whatsoever to express love, affection, and parental concern for [Sue] during the relevant six-month period." *In re A.G.D.*, 374 N.C. at 327.

Nevertheless, respondent-mother maintains that "[t]he dates and reasons for [respondent-mother's] lack of contact [with Sue we]re not stated, explained, or

resolved by the trial court in any manner." This assertion is misplaced. The trial court need not have made any additional findings of fact, as contend by respondent-mother, to support a conclusion of law pursuant to N.C.G.S. § 7B-1111(a)(7) because the findings of fact do not "identif[y] multiple possible impediments to respondent-mother's ability to contact and provide support to [Sue]." *In re K.C.T.*, 375 N.C. 592, 601 (2020).[5] Here, the trial court resolved the reason for respondent-mother's lack of contact: it concluded that respondent-mother willfully abandoned Sue.

---

[5] In *In re K.C.T.*, this Court reversed and remanded for additional findings of fact by the trial court where the trial court's original findings of fact "identifie[d] multiple possible impediments to respondent-mother's ability to contact and provide support to [the juvenile]" but failed "to explore the interplay between these impediments and [the] respondent-mother's intent." 375 N.C. at 601–02. In that matter, the trial court had found that the respondent-mother "ha[d] been diagnosed with bipolar disorder, oppositional defiant disorder, attention deficit disorder, and mental retardation," "ha[d] an IQ in the range of 40–45," "lacked a driver's license," "relied on her family and public transportation for travel," "lived in a different county than petitioners," "was unemployed," and "relied on supplemental security income." *Id.* at 601. Similarly, exercising judgment anew, this Court in *In re N.D.A.*, 373 N.C. 71 (2019), vacated and remanded for proper findings of facts by the trial court where the trial court's findings of fact "consisted of nothing more than a recitation of the relevant portion of respondent-father's testimony without making any determination as to whether the relevant portion of respondent-father's testimony was credible." *Id.* at 78, 84. Significantly, the "respondent-father [had] testified that he had no relationship with petitioner sufficient to persuade him that he had the ability to contact her directly, that he believed that he was not permitted [to] do so, and that, even though he knew that petitioner lived in his community, he did not know her address and could not send [the juvenile] any cards, letters, or gifts for that reason." *Id.* at 79. The respondent-father's testimony was also unchallenged. *Id.* at 78.

Since, in this case, the findings of fact support the conclusion of law pursuant to N.C.G.S. § 7B-1111(a)(7) without the conflicts or disharmony in the findings of fact as present in the previously discussed matters, we affirm the termination of parental right's order as to respondent-mother rather than reversing and remanding for additional findings of fact.

¶ 29     Since only one ground is necessary to support a termination of parental rights, we affirm the portion of the trial court's order terminating respondent-mother's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7) as the findings of fact support the conclusion of law and decline to address respondent's remaining arguments concerning the trial court's conclusion pursuant to N.C.G.S. § 7B-1111(a)(4). *See* N.C.G.S. § 7B-1111(a).

**B.  Respondent-father's Arguments**

¶ 30     Respondent-father contends that parts of findings of fact seven, eight, ten, and twelve and conclusion of law three are not supported by competent evidence but only elaborates on the basis for his challenge for parts of findings of fact seven and eight and the finding of willfulness in conclusion of law three.

¶ 31     We agree that the challenged finding of willfulness as to respondent-father is not supported by clear, cogent, and convincing evidence. Mr. C., when asked whether "you all have contact with the [respondent-]father," responded that he called on Christmas morning. Mr. C. testified that Sue does not talk to respondent-father when he calls but that he does talk to him, and they communicate well. Mr. C. further explained that he communicates with respondent-father's mother and Sue visits with respondent-father's mother on occasion. Mr. C. acknowledged that respondent-father has been incarcerated since before Sue's birth and that Sue was almost three at the time of the termination-of-parental-rights hearing. When testifying, respondent-

father explained that he asks about Sue's health and well-being when he calls petitioners and he speaks with Sue every other weekend when Sue is with his mother. Respondent-father testified at the termination hearing that a year ago he called his mom who put Sue on the phone and told Sue to tell respondent-father her Bible verse. Respondent-father stated that Sue, who would have been less than two at the time, responded, "For nothing shall be impossible with God." Even if we disregarded all of respondent-father's testimony as not credible, the testimony from Mr. C. concerning respondent-father does not provide clear, cogent, and convincing evidence of the willful intent during the determinative period needed for termination of respondent-father's parental rights. Mr. C.'s testimony that respondent-father, who he acknowledged has been incarcerated since before Sue's birth, called on Christmas and he got on well with respondent-father is not evidence that the respondent-father willfully determined to forego his parental duties during the determinative period of 26 February 2019 to 26 August 2019. Without a finding of willfulness sufficiently supported by the evidence, the trial court's conclusion of law that the ground for termination pursuant to N.C.G.S. § 7B-1111(a)(7) exists cannot stand.

¶ 32        As argued by respondent-father, the other ground for termination found by the trial court, under N.C.G.S. § 7B-1111(a)(4), also lacks evidentiary support. Subsection 7B-1111(a)(4) of the General Statutes of North Carolina requires the "willful[ ] fail[ure] without justification to pay for the care, support, and education of

the juvenile, as required *by the decree or custody agreement.*" N.C.G.S. § 7B-1111(a)(4) (emphasis added). The testimony at the hearing did not reference a decree or custody agreement requiring payment for care, support, or education, and no exhibit to this effect was admitted at the termination hearing or attached to or referenced in the verified petition.

¶ 33    Since the testimony at the termination-of-parental-rights hearing does not provide clear, cogent, and convincing evidence supporting the challenged findings of fact of the trial court necessary to support the trial court's conclusions of law for any ground for termination as to respondent-father, we reverse the portion of the trial court's order terminating respondent-father's parental rights.

## IV.    Conclusion

¶ 34    For the reasons set forth in this opinion, we affirm in part and reverse in part the trial court's termination-of-parental-rights order, affirming the order as to the termination of respondent-mother's parental rights and reversing the order as to the termination of respondent-father's parental rights.

AFFIRMED IN PART; REVERSED IN PART.

Justice EARLS concurring in part and dissenting in part.

¶ 35    I join the portion of the majority opinion holding that the allegations in the termination petition were sufficient to comply with the requirements of N.C.G.S. § 7B-1104(2). I also join the portion of the majority opinion holding that there is not clear, cogent, and convincing evidence to support the findings of fact necessary to uphold the trial court's determination that grounds existed to terminate respondent-father's parental rights. However, I dissent from the portion of the majority opinion affirming the trial court's order terminating respondent-mother's parental rights.

¶ 36    The majority is correct that a trial court may only terminate a respondent-parent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(7) upon a finding that the parent "willfully abandoned" his or her child. N.C.G.S. § 7B-1111(a)(7) (2019). Yet the majority ignores the requirement that in order to terminate parental rights pursuant to N.C.G.S. § 7B-1111(a)(7), "the trial court must make adequate evidentiary findings to support its ultimate finding as to whether willful intent exists." *In re K.C.T.*, 375 N.C. 592, 601 (2020) (citing *In re N.D.A.*, 373 N.C. 71, 78 (2019)). Although the trial court did enter a conclusion of law that respondent-mother "willfully abandoned [Sue] for at least six consecutive months immediately preceding the filing of this petition," the trial court did not make any findings assessing whether respondent-mother's conduct towards Sue was willful. The only findings of fact the trial court entered

relevant to this ground were either purely factual descriptions of respondent-mother's conduct or conclusory recitations of the legal standard:

> 7. The Court finds that . . . since prior to the entry of [the order granting custody of Sue to petitioners], the respondents have not had any contact with the minor child, and since the time the child was taken into physical custody of the Petitioners the child has resided with the Petitioners; that the minor child has resided with the petitioners since she initially came home from the hospital after her birth.

> 8. The Court would find that the Respondents have had no meaningful contact with the minor child; that neither respondent has . . . supported the minor child financially or emotionally and has not bonded with the minor child . . . .

> 9. That the respondent mother has struggled ongoing with substance abuse issues and has abandoned the minor child; that she has also failed to support the minor child's needs financially; she has not had any visitation with the minor child dating back to November of 2018, 12 months prior to the filing of this action. She testified to being gainfully employed but has not provided any financial support for the well-being of the minor child whatsoever.

> 10. That grounds pursuant to [N.C.G.S. §] 7B-1111(a)(4) and 7B-1111(a)(7) exist as evidenced by the testimony elicited and findings of fact set forth above.

>      . . . .

> 12. The Court would find the grounds for abandonment and failure to provide support stated in the petition have been proven and would find therefore that grounds for termination of parental rights exists as alleged and proven.

There is no language in these findings suggesting that the trial court examined respondent-mother's circumstances and determined her conduct reflected a "purposeful, deliberative and manifest willful determination to forego all parental duties and relinquish all parental claims to the child." *In re A.G.D.*, 374 N.C. 317, 319 (2020) (cleaned up) (quoting *In re N.D.A.*, 373 N.C. at 79). Absent such language, the only way the majority can reach its legal conclusion that respondent-mother willfully abandoned her child is by "improperly find[ing] facts in this case, which is a job reserved for the trial court." *In re E.B.*, 375 N.C. 310, 325 (2020) (Newby, J., concurring in result only).

¶ 37    The majority attempts to rationalize its journey beyond the order the trial court actually entered by noting that there are no "conflicts or disharmony in the findings of fact." According to the majority, because the trial court did not make findings of fact indicating the existence of circumstances calling into question the willfulness of respondent-mother's conduct, then the trial court "need not have made any additional findings of fact" regarding willfulness. This tautological reasoning ignores the trial court's affirmative obligation to enter findings of fact supporting its legal conclusion that a respondent-parent acted willfully, an obligation which cannot be met by failing to make the necessary findings. Further, a trial court's order containing findings of fact which are not in "conflict[ ] or disharmony" is not the same as a trial court's order containing findings of fact supporting the conclusion of law

that an alleged ground for terminating parental rights has been proven by clear, cogent, and convincing evidence. A parent's constitutional right to the care and custody of their child cannot be extinguished merely because the trial court has entered an internally coherent order if that order is devoid of the findings necessary to justify the exercise of the trial court's authority. In this case, although the findings of fact contained in the trial court's order are not mutually contradictory, they are also not sufficient to sustain its ultimate legal conclusion.

¶ 38     At most, the findings of fact in this case support the conclusion of law that respondent-mother failed to maintain an active relationship with her child. The findings of fact do not support the conclusion that her purported abandonment was willful. Abandonment alone—as opposed to willful abandonment—is not a statutorily enumerated ground for terminating parental rights. See N.C.G.S. § 7B-1111(a). This distinction is no mere technicality. It is necessary to assure adequate protection for a parent's "fundamental liberty interest." *In re Montgomery*, 311 N.C. 101, 106 (1984) (quoting *Santosky v. Kramer*, 455 U.S. 745, 758–59 (1982)).

¶ 39     We have consistently enforced the requirement that a trial court make findings addressing willfulness. For example, we recently vacated an order which contained findings indicating that the respondent-father "had not had any contact with [the juvenile or the juvenile's guardian], had not visited with [the juvenile], had not provided any financial support for [the juvenile], and had not sent any cards, gifts, or

tokens of affection to [the juvenile]" but which did not contain "any findings of fact concerning respondent-father's ability to visit with [the juvenile], to contact [the guardian] or [the juvenile], or to pay support during the relevant time period," because the order "fail[ed] to adequately address the extent to which respondent-father's acts or omissions were willful." *In re N.D.A.*, 373 N.C. at 78–79. The majority's unwillingness to do the same here is inconsistent with our precedents and disregards a "fundamental right" of "critical[ ] importan[ce]." *In re A.K.*, 360 N.C. 449, 457 (2006).

¶ 40          Having concluded that the trial court's findings of fact do not support the conclusion that respondent-mother willfully abandoned Sue, I would reach the trial court's determination that a ground existed to terminate respondent-mother's parental rights under N.C.G.S. § 7B-1111(a)(4) for failure to pay support. Here, the trial court's findings of fact do not support the legal conclusion that this ground for termination was established. A trial court is not entitled to find the existence of this ground for termination unless the record reflects that the petitioner is one of the juvenile's parents, there is an order requiring the payment of support, and the support order was "enforceable during the year before the termination petition was filed." *In re C.L.H.*, 2021-NCSC-1 ¶ 13 (2021) (cleaned up). A careful review of the record establishes that neither petitioner was one of the juvenile's parents. In addition, the record is devoid of any evidence tending to show that either parent was

under an order to pay support to petitioners at any time, and it is devoid of evidence that respondent-mother "*willfully* failed without justification to pay for the care, support, and education of the juvenile." N.C.G.S. § 7B-1111(a)(4) (emphasis added). As a result, the trial court erred by terminating respondent-mother's rights pursuant to N.C.G.S. § 7B-1111(a)(4).

¶ 41        Because its findings do not establish the existence of every element of the two grounds asserted to justify terminating respondent-mother's parental rights, the trial court has failed to properly find that petitioners have met their burden of "prov[ing] the facts justifying the termination by clear and convincing evidence." N.C.G.S. § 7B-1111(b). As the majority aptly explains in reversing the order terminating respondent-father's parental rights, "[w]ithout a finding of willfulness sufficiently supported by the evidence, the trial court's conclusion of law that the ground for termination pursuant to N.C.G.S. § 7B-1111(a)(7) exists cannot stand." In addition, the trial court's findings do not support the conclusion that the requirements for terminating parental rights pursuant to N.C.G.S. § 7B-1111(a)(4) have been met. Under these circumstances, our obligation is to reverse the trial court's insufficient order, not to create facts to fill in its deficiencies. As a result, I would reverse the trial court's order with respect to respondent-mother and remand this case to the District Court, Cleveland County, for further proceedings not inconsistent with this dissenting opinion, including the entry of a new order containing adequate findings

*Earls, J., concurring in part and dissenting in part*

of fact addressing the issue of whether respondent-mother willfully abandoned the juvenile. Therefore, I respectfully dissent from the portion of the majority opinion affirming the termination of respondent-mother's parental rights.

Justice ERVIN joins in this opinion concurring in part and dissenting in part.